**KAUFMAN v. UNITED STATES.**

**No. 9910.**

Circuit Court of Appeals, Sixth Circuit.

July 14, 1947.

Arthur W. A. Cowan, of Philadelphia, Pa., for appellant.

W. Victor Rodin, of Philadelphia, Pa. (John C. Lehr and Frank X. Norris, both of Detroit, Mich., and W. Victor Rodin, of Philadelphia, Pa., on the brief; Milton P. Kroll and Irving M. Pollack, both of Philadelphia, Pa., of counsel), for appellee.

Before ALLEN, MARTIN, and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

Appellant was charged in two indictments jointly with Maurice Niditch, Samuel Lewis and others, including certain residents of Canada, with using the mails in furtherance of a scheme to defraud and with conspiracy to commit the same offenses. Indictment No. 26262 charged the use of the mails to sell and deliver stock of the Devon Gold Mines, Ltd., a Canadian corporation (hereinafter called Devon), without registration, in violation of sections 5(a)(1) and (2), as amended of the Securities Act of 1933, 15 U.S.C.A. § 77e (a) (1, 2), and for conspiring to violate these sections. Indictment No. 26263 charged violations of the anti-fraud provisions of the Securities and Exchange Act of 1933, section 17(a) (1) and (2), as amended, 15 U.S.C.A § 77q(a) (1, 2), and the Mail Fraud Statute, 18 U.S.C.A. § 338, and conspiring to violate these statutes. Counts 2 and 6 of indictment No. 26262 and count 5 of indictment No. 26263 were withdrawn from the consideration of the jury. The Canadian defendants not being within the reach of process, as the offenses charged are not extraditable, the case proceeded against Niditch, Lewis, and the appellant. Lewis pleaded guilty to the third count of indictment No. 26262 and the fourth count of indictment No. 26263. The jury found appellant and Niditch guilty on the eleven counts of both indictments submitted to it. The District Court sentenced appellant and Niditch on substantive counts 1 and 3 of the second indictment only. Niditch was sentenced to imprisonment for five years on each count, to run consecutively, and to pay a fine of $2,500 on each count. Appellant was sentenced to imprisonment for three and a half years on each count, to run consecutively, and to pay a fine of $500 on each count.

The conspiracy count under each indictment alleged continuation of the conspiracy from October, 1938, through April, 1941. The scheme alleged in the two indictments was to effect the sale of Devon stock to holders of stock in the Coulson Consolidated Gold Mines, Ltd., a Canadian corporation (hereinafter called Coulson), all of whose assets had been acquired by Devon in 1937. During all the period in question Devon was in financial straits. The Ontario Securities Commission had refused permission on November 27, 1939, for the sale of 173,000 shares of Devon stock unless Devon should arrange with its creditors for an extension of time for the payment of its debts. This extension, and two similar extensions running until April 30, 1941, were arranged. On June 16, 1941, Devon filed an assignment in bankruptcy.

In November, 1939, E. M. McLean & Company (hereinafter called McLean), a concern doing a brokerage business in Toronto, Canada, secured through Niditch an exclusive option to sell Devon shares. In July, 1939, Niditch had been made general manager of McLean, with entire control over its business. Under the contract he was to receive 85% of the net profits of the business.

Under the option between McLean and Devon, 450,000 shares of Devon capital stock were to be available for McLean in blocks of 150,000 each, at prices of 12½ cents, 15 cents, and 17 cents per share respectively. In addition to taking up this stock, under the option, McLean purchased on the street 24,050 Devon shares at prices ranging from 5¼ to 8 cents per share, purchased from private individuals 225,000 Devon shares at about 12⅔ cents a share, and also sold to the public 25,000 shares of bonus Devon stock which it received free of charge from Devon. These shares it offered to the 1,800 stockholders of Coulson residing in the United States, representing them as being an especial bargain at 25 cents and 30 cents per share.

It was the theory of the Government, evidently adopted by the jury, that appellant was the star salesman for Niditch and McLean. Appellant's defense was that while during the period of the option, from January, 1940, to the end of March, 1940, and subsequently, he was in Toronto and frequently called on Niditch, he never discussed with Niditch the sale of the Devon stock, nor in any manner took part in the floating of these stocks. He was identified by a number of the 19 investors from various parts of the United States who testi-

fied to having bought the Devon stock from him because of the high pressure salesmanship and the false representations hereinafter described. But appellant claimed that this was a case of mistaken identity and that he had nothing to do with the transactions. The record shows, however, that under the name of Russell, Spicer or Spencer, appellant called upon a number of these investors, making glowing statements concerning the value of Devon stock. He represented that the stock would soon be listed on the Toronto Stock Exchange; that Devon would be a second Noranda (a Canadian gold mine which paid over $8,000,000 dividends annually in 1939 and 1940); that a half million dollars' worth of ore had been mined, and was ready for milling; that the money secured from the sale of the stock was to be put back into the development of the mine. Within a day or two after appellant made his first call the investor prospect would receive a long-distance telephone call from Toronto from a person representing himself to be McLean, of McLean & Company, who urged the purchase of the Devon stock. These calls would be repeated until the prospect invested, or positively refused to buy. It was shown that Niditch personally made these telephone calls; that McLean's telephone bill during this period was over $4,000, and that the outgoing calls of McLean did not go through the switchboard, but were handled privately from Niditch's office.

While appellant never used his own name, his identification by the witnesses, some of whom saw him on three or four occasions, is very definite.

Mrs. Ethel Milford saw appellant on three different occasions, and made three successive purchases. In making these sales appellant used the name of Spencer. He induced Mrs. Milford to purchase an aggregate of 125,000 Devon shares, at 30 and 35 cents a share, for a total payment of $39,000. In addition to securing $7,500 cash from Mrs. Milford, appellant induced her to turn over to McLean her dividend-paying shares, including shares of American Telephone & Telegraph Company, Phelps-Dodge, Anaconda, Calumet and Hecla, Hudson Bay, and Park Utah. The misrepresentations were substantially identical with those described above, and were made at the time that Devon was insolvent. No application to list Devon on the Toronto Stock Exchange was ever made, and its bank account was almost continuously overdrawn from January to June, 1940. Only a fraction of the money paid by Mrs. Milford reached the treasury of Devon. The appellant, under the name of Spencer, had previously induced Mrs. Elizabeth B. Thaw, of Pittsburgh, to purchase 110,000 shares, which sale she had cancelled upon discovering that the appellant had falsely represented to her that Dome Mines, a prosperous Canadian company was negotiating a merger with Devon. Fearing that Mrs. Milford also might cancel one of these sales and make trouble, the appellant induced her to write a letter in her own handwriting, addressed to McLean, stating:

"This is to advise you that I have received all your literature in Devon Gold Mines, Limited, and have read same carefully and solely because of the facts contained therein, there being no other representations made to me by any of your agents, I have decided to become a substantial shareholder in this company, and am purchasing this company's shares for the long pull investment purpose and not with any intention of turning same over for quick market play."

All of the 19 investors who testified were Coulson stockholders. They had been told, as Mrs. Milford was, that they were privileged to purchase Devon stock on more favorable terms than the general public, although McLean at the same time was purchasing Devon stock on the street at prices from 5¼ to 8 cents a share and unloading it with Coulson stockholders at 25 to 30 cents a share.

It is not questioned that the United States mails were extensively used in these transactions. Moreover, the jury was warranted in finding that a conspiracy existed as charged in the indictment. The representations made by appellant to the witnesses to whom he sold Devon stock were practically identical with those made by Niditch, Lewis and Merritt to other investor witnesses. The jury was entitled to consider the cooperation of Niditch and appellant

in concealing appellant's connection with the sales campaign. While appellant negotiated the two largest sales made, those to Mrs. Thaw and Mrs. Milford, no commission account was listed on the books in the name of Kaufman. There was an account in the name of Spencer, and appellant sold Mrs. Thaw and Mrs. Milford under that name. This account showed that $24,750 had been paid to Spencer, but the items making up this amount were not supported by any check payable to Spencer. This was due to Niditch's practice of using large checks payable to cash, and his failing to record the person to whom or the item for which the money was expended. Nicoll, the accountant employed by McLean to periodically inspect the books, testified that he frequently criticised this practice of Niditch, calling it a "loose system" which would not properly protect Niditch and McLean; but Niditch continued to issue checks payable to cash.

Niditch claimed not to know who Spencer was. He said that Spencer was recommended to him as being a good salesman, and that Niditch employed him, but had never seen him. Niditch testified that he paid Spencer's commissions in cash to a man named Martin. These and other facts presented constitute evidence of a closely organized scheme of operation and a conspiracy to defraud as charged in indictment No. 26263.

The violation charged in indictment No. 26262 is clearly shown. The stock of Devon was not registered with the Securities and Exchange Commission of the United States. Niditch had his attention called to this fact by an investigator of the Ontario Securities Commission, and although he promised to discontinue the sale, he proceeded in defiance of the warning to intensify his campaign.

■ Appellant raises many contentions which were not made at the trial, no objection being made to rulings or action of the court which appellant now considers to be so prejudicial as to require reversal. All of these contentions have been carefully considered, but many of them merit no discussion here. Recognizing that the court is empowered to correct plain and palpable error even in the absence of objection [Schmeller v. United States, 6 Cir., 143 F.2d 544], we proceed to consider the most important points raised.

■ The granting of the request for a bill of particulars was discretionary with the court, and no abuse of discretion existed in the denial of the request. The indictments fairly apprised the appellant of the charges against him. In view of the length of the trial, which lasted more than a month, it cannot reasonably be contended that the appellant did not have ample opportunity to prepare his defense on every phase of the case. Cf. United States v. Cohen, 2 Cir., 145 F.2d 82, 83.

■ The failure of the court to sequester the witnesses, appellant contends, deprived him of a fair trial because the essence of his defense was mistaken identity. He stoutly maintained that he did not commit the acts charged, and that he never was employed by Niditch. Sequestration of witnesses in the federal courts is discretionary with the trial court, and its ruling will not be disturbed in the absence of manifest prejudice. Mitchell v. United States, 10 Cir., 126 F.2d 550, 553, certiorari denied 316 U.S. 702, 62 S.Ct. 1307, 86 L.Ed. 1771. Even if the request had been timely made, we would hesitate on this record to hold that a failure to separate the witnesses was manifestly prejudicial, for the identifications were in the main complete and positive. The situation presented was not that of a short and hasty encounter, as in a robbery, but an acquaintance growing out of numerous successive interviews on the part of several of the witnesses. Horace A. Johnson, of Vestal, New York, and his wife positively identified appellant as having sold Devon stock to them in May, 1939, under the name of Russell. They had four successive interviews with Russell and a substantial amount of time was spent in each interview.

Conella had two interviews with appellant. Mrs. Milford, who had reason to remember the man whom she talked with, had three interviews with appellant, under the name of Spencer. Niditch stated that Spencer sold both Mrs. Thaw and Mrs. Milford. Spencer was also on Niditch's

written list of salesmen which was introduced in evidence. Appellant was clearly identified by Niditch's secretary, who saw him come into the office frequently during the period charged in the indictment. She saw Niditch give appellant customer cards, and on one occasion appellant gave her five dollars, which Niditch explained on the ground that appellant had made a "good sale."

In the face of this positive testimony, supported by appellant's admission of his presence in Toronto at the time and his frequent calls on Niditch, it would seem to be a violation of the harmless error rule (28 U.S.C. § 391, 28 U.S.C.A. § 391) to reverse this case for lack of sequestration of the witnesses. But the conclusive answer to appellant's contention is that the application for sequestration was not made until the case had been in progress over a week and a half. The Johnsons, Conella, and Miss Brown, had already testified, identifying the appellant as the man who sold them stock under the name of Russell, Spicer or Spencer. The court, commenting upon the application to separate the witnesses, said that the harm had already been done, and appellant's counsel, apparently conceding the truth of the comment, did not urge the point further.

■ The court refused to allow inspection of the notes of the government investigator, Callahan, as to the interview of November, 1940 with Niditch. Callahan had read over the notes a few days before giving his testimony, in order to refresh his recollection; but the notes were not used on the witness-stand. They were part of the Government's files, and privilege was claimed for them under the rules of the Securities Exchange Commission. Counsel for Niditch demanded the notes and took exception to the refusal of the court to compel their production. Counsel for appellant had taken a general exception in every case where exception should be reserved on behalf of Niditch, and assuming that this exception covers this phase of the case, we consider whether the refusal to force production of the Government's files was error. Under the circumstances the declaration of the Supreme Court in Goldman v. United States, 316 U.S. 129, 132, 62 S.Ct. 993, 86 L.Ed. 1322, is squarely applicable. As there stated, where a witness does not use his notes or memoranda in court, a party has no absolute right to their production and inspection. The trial judge is invested with a large discretion in such a situation, and here that discretion was not abused. Cf. National Labor Relations Board v. T. W. Phillips Gas & Oil Co., 3 Cir., 141 F.2d 304, 306.

■ It is vigorously contended that appellant's application for a mistrial should have been granted because the District Attorney demanded that the defendants produce the original of a letter in order to prove a copy in the possession of the Government. The court did not sustain the application of the District Attorney, and in effect rebuked it. Counsel for Niditch later read the original of the letter on cross-examination. The contents of the letter were not incriminating, as was the case in McKnight v. United States, 6 Cir., 115 F. 972, 981. The request to produce the original under these circumstances was not prejudicial. Gridley v. United States, 6 Cir., 44 F.2d 716, 736.

■ Neither the cross-examination of the appellant nor the closing argument of the District Attorney was so objectionable as to deprive the appellant of a fair trial. Much of the cross-examination related to the use of the names Spicer, Spencer and Russell by appellant. Some of it was concerned with the fact developed in appellant's direct examination that he had pleaded guilty to a violation of the Pennsylvania Securities Act, 70 P.S. § 31 et seq. It was shown that the certificate of conviction in the Pennsylvania case described appellant as a fugitive. He denied that he was a fugitive, and was vigorously questioned as to this and his various aliases. The court allowed wide latitude in cross-examination both to the Government and the accused, and the trial in this respect was not unfair.

■ Counsel for the Government quoted to the jury part of a statement made by Mahon, solicitor for the Ontario Securities Commission, to Niditch, while Mahon was questioning Niditch concerning the sales

410

to Mrs. Milford, and appellant contends here that this quotation of the record to the jury constitutes reversible error. The quotation was elicited when counsel for Niditch interrupted the Government's argument which charged that certain of the investors had met with "financial ruin" through purchases of Devon stock, by saying that there was nothing in the record to that effect. This was an erroneous declaration. Mrs. Bowditch, an investor, had testified, for instance, that she put into the purchases "all she had." Counsel for the Government, in answer to this interruption, repeated the conversation between Mahon and Niditch in which Mahon in effect accused Niditch of wiping out Mrs. Milford's fortune. Niditch's reply was "Why, no, I didn't. I didn't get her home stake."

This statement was plainly competent against Niditch, who was being jointly tried with appellant, and its repetition was called forth by counsel for Niditch, who misstated the facts of the record. No further objection was made by counsel for either defendant. The court instructed the jury as follows:

"Kaufman through his attorney requests the court and I charge you that government witnesses Mahon and Callahan have testified to certain statements made to them by the defendant Niditch. I charge you that you cannot consider this testimony in passing upon the guilt or innocence of the defendant Kaufman. These statements of Niditch were not the declarations of a coconspirator made during the course of a conspiracy to effect the object thereof and, therefore, they are not binding upon Kaufman."

In view of the colloquy between counsel and the court's express and emphatic direction to the jury, the use of this quotation did not constitute reversible error.

■ Nor did the court err in giving to the jury forms which for their convenience listed the numerous counts of the two indictments with appropriate spaces for the finding of guilty or not guilty. The jury was not required to use these forms, and no objection was made at the time.

■ No objection or exception was taken to the charge of the court as a whole.

The court read to the jury two of appellant's requested charges on "public offering," and rightly refused the requests which were based upon the theory that because Coulson had been registered, Devon stock sold in the United States need not be registered. Securities and Exchange Commission v. Sunbeam Gold Mines Co., 9 Cir., 95 F.2d 699; Securities Act of 1933, section 4(1), 15 U.S.C. § 77a et seq., 15 U.S.C.A. §§ 77a et seq., 77d (1).

■ The appellant charges that it was reversible error to treat the case as a single conspiracy, that the proof tended to show from two to twelve separate conspiracies, and that the rule announced in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 1249, 90 L.Ed. 1557, requires reversal.

Appellant points to no portion of the court's charge nor to any specific ruling which raises this question. In the Kotteakos case, the court instructed the jury as follows:

"The indictment charges but one conspiracy, and to convict each of the defendants of a conspiracy, the Government would have to prove, and you would have to find, that each of the defendants was a member of that conspiracy. You cannot divide it up. It is one conspiracy, and the question is whether or not each of the defendants, or which of the defendants, are members of that conspiracy."

Here the court did not even charge upon the subject of single or multiple conspiracies. No general exception was taken to the charge and no exception at all was taken with reference to this question. In the Kotteakos case the Supreme Court held (at page 767 of 328 U.S., at page 1249 of 66 S.Ct.) that the trial court was confused in its charge, and in effect held that this confused the jury. Obviously no such claim of confusion can be made here.

Assuming, although not deciding, that the error claimed is presented, we think the Kotteakos case clearly is not applicable. There the fraudulent applications for the loans were made for different and independent people connected by the circumstance that the various loans were arranged by the same individual. As the Supreme

Court pointed out (at page 758 of 328 U.S., at page 1245 of 66 S.Ct.), "the more numerous participants in the different schemes were, on the whole, except for one, different persons who did not know or have anything to do with one another." Here the project of unloading Devon stock on the Coulson shareholders was carried out by salesmen who were closely interrelated. They were hired by the same broker, Niditch; they employed identical tactics, and made the same fraudulent representations. Appellant and other salesmen had been engaged in the fraudulent sales even prior to the time that McLean secured the option from Devon, and their fraudulent transactions were details in the accomplishment of the single main scheme. In Baker v. United States, 5 Cir., 156 F.2d 386, 391, 392, fraudulent transactions similar to those presented here were asserted upon the basis of the Kotteakos case to constitute multiple conspiracies. The court distinguished the Kotteakos case and held that one single conspiracy had been shown to exist. Certiorari was denied October 8, 1946, 329 U.S. 763, 67 S.Ct. 123.

 The contention is raised for the first time in appellant's reply brief that the District Court had no jurisdiction over the scheme to defraud alleged in the indictments nor over the mailings as laid in counts 1 and 3 of indictment 26263 under which the sentence was imposed, because the confirmation and receipt for money addressed to Mrs. Ethel Milford at Detroit, Michigan, described in these counts, were mailed in Toronto, Canada.

The crime described in the statute and in the indictments includes delivery as well as mailing with a fraudulent purpose, 18 U.S.C. § 338, 18 U.S.C.A. § 338, and the Government may decide to prosecute in the district where the letter was received. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; Bozel v. United States, 6 Cir., 139 F.2d 153. Not only the mailing, but the delivery of various letters, shares of stock, receipts, etc., are described in indictment No. 26262, and as to these alleged violations of the statute upon which the jury found the appellant guilty, the court clearly had jurisdiction.

Moreover, under counts 1 and 3 of 26263 it is charged not only that the defendants mailed these items in Detroit, but that they caused them to be placed in the post office of the United States in the city of Detroit to be transmitted to Mrs. Milford in Detroit. The scheme and artifice to defraud contemplated the use of the mails in the United States. Obviously the mailing of the confirmation and receipt in Canada, addressed to a person in Detroit, in pursuance of the conspiracy contemplates the use of the mails in Detroit not only in the delivery of the item but also in the placing of the item in the Detroit post office for that purpose. The record clearly supports the jury's finding that the appellant caused them to be so placed, as charged in counts 1 and 3 of indictment No. 26263. Cf. United States v. Steinberg, 2 Cir., 62 F.2d 77, which upheld a conviction under an indictment for using the mails to defraud where the letter was posted in Canada and received in the United States. The District Court had jurisdiction here under both indictments and under the counts upon which sentence was imposed.

The judgment of the District Court is affirmed.