THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. VINCENT DiMODICA, DEFENDANT-APPELLANT.

Argued May 7, 1963—Decided July 1, 1963.

Mr. *Frederick Klaessig* argued the cause for defendant-appellant.

Mr. *Peter Murray,* Assistant Prosecutor, argued the cause for plaintiff-respondent (Mr. *Brendan T. Byrne,* Prosecutor of Essex County, attorney).

The opinion of the court was delivered by

PROCTOR, J. The defendant was found guilty by a jury of the crime of robbery while armed. The Appellate Division affirmed his conviction. *State v. DiModica,* 73 *N. J. Super.* 1 (*App. Div.* 1962). We granted the defendant's petition for certification. 38 *N. J.* 360 (1962).

The facts of the robbery are not in dispute except with respect to the identity of the robber. On the night of September 6, 1958, after closing hours, Donald Griffith, Anthony Belenski and Melvin Byers, employees of the Good Deal Supermarket in West Orange, were inside the store's "courtesy booth" counting the day's receipts when a lone intruder vaulted the railing of the booth and, brandishing a pistol, ordered them to lie on the floor. The employees complied. After obtaining several thousand dollars from the store's safe, which was not locked, the gunman marched the employees downstairs to the cellar and then fled. Immediately after the robbery, each of the employees gave his description of the robber to the police. In April 1960, as a result of information

received by the West Orange police, Griffith and Belenski separately viewed a lineup at State's Prison in Trenton, where the defendant was incarcerated for another crime. After seeing the defendant in the lineup, each identified him as the robber.

At the trial, all three robbery victims positively identified the defendant as the armed man who had robbed them. The defense was that of alibi. Thus, the basic issue submitted to the jury was whether the defendant was the robber. As mentioned above, the jury found the defendant guilty.

On the defendant's appeal to the Appellate Division, one of his principal contentions was that the trial court erred in denying him access to the grand jury testimony of the witness Griffith. It appears that shortly after commencing his cross-examination of Griffith, the State's first witness, defense counsel asked him whether he had testified before the grand jury. Upon learning that Griffith had so testified, counsel applied to the court for a transcript of Griffith's grand jury testimony so that he might explore all possibilities of inconsistency between Griffith's prior testimony and the evidence he gave at the trial. The trial court denied the application on the ground that there was nothing to indicate that the witness had contradicted himself. In rejecting the defendant's contention, the Appellate Division said:

"Here, defendant does not claim or even suggest that there is a variance between Griffith's testimony before the Grand Jury and at trial. Defendant merely wants to explore the possibility. This, without more, does not establish a right to the testimony." 73 *N. J. Super.*, at *p.* 7.

In addition, the court said that the application was tardy since it was not made until defense counsel was actually cross-examining Griffith and, in any event, it had not been shown that a transcript was available at the trial or even that the grand jury testimony had been transcribed. The court held that the granting or denial of an application to inspect grand jury testimony is within the sound discretion of the trial

court and that in view of the circumstances mentioned above, the trial court's ruling was not an abuse of discretion. *Ibid.*

■■ In granting the defendant's petition for certification, we directed the trial court to take testimony regarding whether a stenographic record of the testimony of the witnesses before the grand jury had in fact been taken. On the remand, the inquiry disclosed that no stenographer was present at the grand jury proceedings in question, and hence no record of Griffith's testimony exists. The trial court's denial of the defendant's application, therefore, even if erroneous, cannot be considered harmful. Nevertheless, in view of the position taken by the Appellate Division in affirming the trial court's ruling, we think discussion of this point is warranted.

*R. R.* 3 :3–7 reads:

"The requirements as to secrecy of proceedings of the grand jury shall remain as heretofore."

We recently had occasion in *State v. Clement,* 40 *N. J.* 139 (1963), to consider the scope of this rule. We there noted that the undefined concept of secrecy contained in the rule does not present an absolute bar to the disclosure of grand jury testimony; rather, such secrecy must rest upon some greater social need in order to justify impeding the search for truth. We concluded that, consistent with the rule, development of the concept of secrecy may properly be made on a case by case basis. In *Clement,* the defendants sought inspection of a transcript, which was available, of their own grand jury testimony in order to prepare for trial. They asserted that their recollection of their testimony was not complete or precise, and their counsel certified he could not adequately prepare for trial unless he knew what his clients had said. We observed that the reasons for grand jury secrecy are as follows (quoting from *United States v. Rose,* 215 *F. 2d* 617, 628–629 (3 *Cir.* 1954)):

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury

in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt." *State v. Clement, supra,* 40 *N. J.,* at *p.* 143.

Since we found that none of these reasons applied where the grand jury testimony sought was that of the defendants themselves, we held there was no need for grand jury secrecy and hence no good reason to deny the defendants access to the transcript of their own testimony.

In the present situation, none of the above reasons for grand jury secrecy stands in the way of permitting a defendant at trial to inspect the grand jury testimony of a witness who has already testified against him on direct examination. The first reason obviously does not apply since the defendant is already in custody. The second, to insure full and free participation by the grand jurors in the inquiry before them and to prevent their being importuned by persons subject to indictment or their friends, is also inapplicable. As noted in *Clement,* the trial court has ample power to excise any portions relating to questions or opinions of grand jurors which might be embarrassing to them, and the danger of the defendant's or his friends' importuning grand jurors no longer exists after the indictment has been returned and the trial is under way. As to the third reason, since the witness has already testified against the defendant on direct examination, disclosure at that stage of the proceedings would not enable the defendant to suborn perjury or tamper with the witness. The fourth reason, to encourage free disclosures by persons who have information with respect to the commission of crimes, is also inapplicable, since the only testimony which is sought is that of a witness who has already freely testified in open court. The last reason, to protect persons who were

exonerated by the grand jury, is obviously inapplicable to the present case.

■■ From what has been said above, we see no reason in the circumstances before us which would have justified retaining the secrecy of Griffith's grand jury testimony after he had completed his direct examination for the State, if a record of such testimony had been available. It has long been settled in this State that a witness may be queried as to whether his testimony at trial accords with his testimony before the grand jury. *State v. Bovino*, 89 *N. J. L.* 586, 588 (*E. & A.* 1916; *State v. Silverman*, 100 *N. J. L.* 249, 252 (*Sup. Ct.* 1924); *State v. Goldman*, 14 *N. J. Misc.* 463, 465, 185 *A.* 505 (*Sup. Ct.* 1936); *State v. Samurine*, 47 *N. J. Super.* 172, 178 (*App. Div.* 1957), reversed on other grounds, 27 *N. J.* 322 (1958); 8 *Wigmore, Evidence*, § 2363, *p.* 737 (*McNaughton rev.* 1961). In the present case, the Appellate Division seemingly would require the defendant to show the court some basis for a belief that there was in fact a variance between Griffith's testimony before the grand jury and his testimony at the trial. We cannot accept this requirement. A defendant is in no position to determine whether such a variance exists until he is afforded an opportunity to inspect the prior testimony. Requiring him first to show conflict between the grand jury testimony and the trial testimony of a State's witness, therefore, would effectively foreclose the defendant from using the grand jury testimony for purposes of cross-examination. See *Jencks v. United States*, 353 *U. S.* 657, 667–668, 77 *S. Ct.* 1007, 1 *L. Ed. 2d* 1103, 1111–1112 (1957); *Pittsburgh Plate Glass Co. v. United States*, 360 *U. S.* 395, 401, 79 *S. Ct.* 1237, 3 *L. Ed. 2d* 1323, 1328 (1959) (dissenting opinion). Nor do we think that the defendant's application to the trial court was tardy because it was made after Griffith's direct examination had been concluded. Indeed, an application made prior to that time could properly be denied under *R. R.* 3:5–11. See *State v. Johnson*, 28 *N. J.* 133, 142–143 (1958); *cf. State v. Hunt*, 25 *N. J.* 514, 524 (1958).

■■ The defendant contends on his appeal to this court that the State's failure to have a stenographer present at the grand jury proceeding and a record made of the testimony "essentially deprived the defendant of the Constitutional right to substantive Indictment by a Grand Jury." The defendant cites no authority for this proposition. The existing law in this State is clearly of a permissive nature with regard to the presence of a stenographer and the recording of testimony adduced before a grand jury, *N. J. S.* 2A:73–7; *R. R.* 3:3–6, and we find nothing in the constitutional right to indictment which would require that a record be made of such testimony. The grand jury's function as a constitutional safeguard is only to determine whether the evidence placed before it is sufficient to warrant the return of an indictment, so that persons may be protected from being forced to stand trial on unfounded criminal charges. Whether a record is kept of the testimony produced at the grand jury proceeding can have no bearing on the fulfillment of this function, and hence the absence of such a record does not affect the defendant's constitutional right.

■ The defendant also contends the Appellate Division erred in holding that the trial court did not abuse its discretion when it overruled his motion to exclude Belenski and Byers from the court room while Griffith was on the stand.

At the trial, when Griffith had completed his direct testimony, the defendant moved that Belenski and Byers be sequestered during the cross-examination of Griffith. No further motion was made, nor does the defendant now contend, that Byers, the State's third witness, should have been excluded while Belenski testified. After hearing argument from both sides, the trial court denied the motion without expressing its reason for doing so. The Appellate Division, in rejecting the defendant's claim of error, held that sequestration of witnesses is a matter which rests in the sound discretion of the trial judge, and since the defendant's motion was not made until after the direct examination of Griffith had been completed and was limited to excluding the other

two identification witnesses during Griffith's cross-examination, the trial court did not abuse its discretion. It further observed the record did not disclose that anything was brought out on Griffith's cross-examination which might have tended to "educate" the remaining witnesses. 73 *N. J. Super.,* at *p.* 4.

That sequestration is discretionary with the trial court is the rule in the great majority of jurisdictions. Annotation, 32 *A. L. R.* 2d 358 (1953); 6 *Wigmore, Evidence,* § 1839, *p.* 359 (*3d ed.* 1940) (citing cases). Dean Wigmore, while recognizing the majority rule, is of the opinion that sequestration should be allowed as a matter of right. 6 *Wigmore, supra,* at *p.* 357. We reserved this question in *State v. Williams,* 29 *N. J.* 27 (1959), as reversal was there required for other reasons. Nevertheless, we observed that the reason for sequestration is to prevent prospective witnesses from hearing what the other witnesses detail in their evidence, "for the less a witness hears of another's testimony the more likely is he to declare his own knowledge simply and unbiassed" (quoting from *State v. Zellers,* 7 *N. J. L.* 220, 226 (*Sup. Ct.* 1824)). *State v. Williams, supra,* 29 *N. J.,* at *p.* 46. And we noted that an exercise of sound discretion ordinarily requires that a motion for sequestration be granted. *Ibid.* We add that in order to uphold the denial of a timely motion for sequestration the record should disclose a sound basis for such denial. Where there is an arbitrary denial of a timely motion, it is not necessary for the defendant to show that he has been prejudiced thereby. Such a showing would be virtually impossible to make, for no one can tell how the later witnesses' testimony might have differed had the motion been allowed. See *People v. Dixon,* 23 *Ill.* 2d 136, 177 *N. E.* 2d 206 (*Sup. Ct.* 1961). In the present case, however, the defendant's application was not timely. He failed to make his motion until after the direct examination of Griffith had been completed. Thus, sequestration of the remaining identification witnesses would no longer have served its underlying purpose to any substantial degree. Moreover, we find no significant new mat-

ters brought out on Griffith's cross-examination which could have influenced their testimony. Although the trial court might still properly have granted the defendant's request, we agree with the Appellate Division that the record does not disclose any prejudice resulting to the defendant from the trial court's refusal to grant the request. *R. R.* 1:5–1(a); see *People v. Winchester*, 352 *Ill.* 237, 185 *N. E.* 580 (*Sup. Ct.* 1933); *cf. Kaufman v. United States*, 163 *F.* 2d 404 (6 *Cir.* 1947); *State v. McLeod*, 131 *Mont.* 478, 311 *P. 2d* 400 (*Sup. Ct.* 1957).

The defendant also contends that the trial court's supplemental charge to the jury was coercive and diluted the jurors' sense of responsibility. The supplemental charge was given when the jurors announced their inability to reach a verdict after 4½ hours of deliberation. By the challenged charge, the court instructed that it was the duty of the jury to arrive at a verdict if that were possible, and that the individual jurors were not to cling stubbornly to the positions they first took without giving due regard to the views of their colleagues. The defendant objected because the supplemental charge did not include an instruction that the jurors should remain faithful to their conscientious conclusions and abiding convictions and should not change them merely for the purpose of arriving at a verdict. The trial court refused to augment its supplemental charge on the ground that such an instruction had clearly been made part of its main charge. The jury returned with its verdict after an hour of further deliberation.

We think it would have been better had the trial court, in its supplemental charge, included an admonition substantially as requested by the defendant. Nevertheless, the supplemental charge, unlike that given in *In re Stern*, 11 *N. J.* 584 (1953), relied on by the defendant, contained no coercive element which could be expected to have influenced some of the jurors into an agreement with their colleagues against their own personal convictions. Moreover, the length of time in which the jury continued its deliberations before

reaching its verdict negates an inference that any such influence might have resulted from the charge. See *Slate v. Williams*, 39 *N. J.* 471, 485 (1963); *State v. Cottone*, 52 *N. J. Super*. 316, 326 (*App. Div.* 1958), certif. denied 28 *N. J.* 527 (1959); cf. *United States v. Rogers*, 289 *F. 2d* 433, 436-437 (4 *Cir.* 1961). We find no merit to this contention.

The defendant also raises several other contentions, all of which we consider to be without substance. Our study of the record convinces us that the defendant's trial was free of harmful error, and the credible evidence is clearly sufficient to support the jury's verdict.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For reversal*—None.