603 A.2d 946

MORTON BUILDINGS, INC., PLAINTIFF–RESPONDENT,
v. REZULTZ, INC., DEFENDANT–APPELLANT.

Argued December 2, 1991—Decided March 24, 1992.

*Mitchell H. Kizner* argued the cause for appellant (*Riesenburger & Kizner,* attorneys).

*Theodore Henry Ritter* argued the cause for respondent (*Ritter, Hanford and Pryor*, attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

This case raises the question whether a representative of a party that is not a natural person, *e.g.*, a corporation, may be excluded at trial from the courtroom pursuant to a witness-sequestration order. We hold that such a representative may not be so sequestered, but that the sequestration in this case was harmless error.

–I–

Although the sole issue before us raises a procedural point, a brief description of the underlying facts will aid comprehension of the case. Sometime in 1986 appellant, Rezultz, Inc. (hereinafter Rezultz), decided to add office and garage space to its existing building in Vineland. An architect prepared a blueprint that was used to obtain bids from contractors. The blueprint showed a concrete building of specified dimensions with a "garage," office space, and a three-hour fire wall to separate the two areas.

One of the bidders was respondent, Morton Buildings, Inc. (hereinafter Morton), which designs, fabricates, and erects prefabricated steel buildings. Morton's representative, Dennis Russum, visited the Rezultz facility and discussed the project with several employees of Rezultz, including Gregory Call, Rezultz's vice president, and Tom Siciliano, its president. Call gave Russum a copy of the blueprint, which Morton used in preparing its bid.

Morton's buildings were made of steel instead of concrete. Consequently, Russum used the architect's blueprint as a guide only to the size and dimensions of the addition. Notwithstanding the deviation, Rezultz accepted Morton's bid of $42,500. The parties signed a contract, which described the addition as

consisting of an office area and "repair shop," not as an office area and "garage" as shown on the blueprint. After the contract had been signed, Morton prepared its own blueprint with no interior details. The blueprint showed the two areas separated by a "partition wall," not a fire wall. Apparently Rezultz did not notice the discrepancy.

Under the basic building code (BOCA Code), which was in effect in Vineland, the difference between a "repair shop" and a "public garage" is significant. A "repair shop" is a storage area to be used for only one vehicle, but an area for the storage of two or more vehicles is a "public garage." A public garage, unlike a repair shop, must be separated from an adjoining office building by a fire wall. At trial, the substantive dispute centered on whether the addition was a repair shop, as the agreement indicated, or a garage, as indicated on Morton's plans.

When Rezultz applied for a building permit, it submitted the Morton blueprint without any additional plans for the interior of the building. Consequently, the Vineland construction office approved the blueprint with a notation "shell only," apparently indicating that the office had not reviewed the interior partition wall.

Morton constructed the addition without a fire wall. Siciliano, on behalf of Rezultz, accepted the building, in writing. The building inspector, however, determined that the garage area was a "public garage" under the building code, and refused to issue a certificate of occupancy. At a cost of $14,235, Rezultz subsequently hired another contractor to remove the wall constructed by Morton and to build the fire wall. Consequently, Rezultz withheld the final payment of $17,000 owed Morton. Morton sued Rezultz for that payment, and Rezultz counterclaimed for breach of warranty and fraud.

The case was tried in the Law Division by the court sitting without a jury. Much of the dispute at trial centered on the terms of the agreement between the parties. The court found

that the written contract did not completely encompass their agreement. Thus, to clarify the terms of the agreement, the court allowed testimony of conversations among representatives of the corporate parties. The key issue was whether Morton knew or should have known that Rezultz's intended use of the garage area fell within the building code's definition of a "public garage."

When the trial commenced, Call was seated at the defense table with Rezultz's counsel. Russum testified as Morton's only witness on its direct case. Rezultz then called the building inspector, during whose testimony both Russum and Call were present. Then Call testified about his conversations with Russum. After Call had finished his direct testimony, the court adjourned the matter until the next day.

On the second day, before cross-examining Call, Morton's counsel noticed that Siciliano, who was scheduled to testify for Rezultz, was in the courtroom. He thereupon moved to sequester all witnesses scheduled to testify. Rezultz's counsel objected, stating that because Siciliano was Rezultz's president, sequestering him was the same as sequestering a party. Noting that Siciliano was not a named party, the court granted the motion to sequester. Accordingly, Siciliano left the courtroom during the cross-examination of Call. Russum, who was a possible rebuttal witness for Morton, also left. To appreciate the significance of that ruling and others concerning the sequestration of witnesses, we summarize the testimony of the witnesses for both sides, indicating who was present during their testimony.

After his cross-examination had been completed, Call remained to hear the testimony of Rezultz's building code expert. On completion of that testimony, Morton's counsel stated that Call should be barred from testifying further because he had not obeyed the sequestration order. The court then directed Call to leave, adding that it assumed Call had remained because Rezultz's counsel had no intention of recalling him. Once Call

left, the only person present on behalf of Rezultz was its counsel. Neither Call nor Russum remained in the courtroom.

Rezultz's next witness was Siciliano, who testified about his conversations with Russum before signing the contract. Siciliano also testified that although he was Rezultz's president, his duties were "absolutely nothing at all," and that Call actually ran the company. The final defense witness was the builder Rezultz had hired to construct the fire wall.

On the third day, Morton presented the testimony of Russum and two other witnesses in defense of Rezultz's counterclaim. Russum's testimony centered on conversations between the parties. Rezultz's counsel cross-examined Russum without requesting a recess to confer with Call or Siciliano about Russum's testimony. Morton then concluded its case with the testimony of its engineer, who had approved the plans, and a building code expert.

Finally, Call testified as a rebuttal witness despite his earlier violation of the sequestration order. He stated that Russum had been told of Rezultz's intended use of the garage area. When Call had finished testifying, he sat at the counsel table, and Rezultz called a final witness to testify about the conversations between the parties.

On the following day, the court entered judgment in favor of Morton for approximately $30,000, plus attorney's fees and costs. Relying on testimony of discussions between the parties, particularly those among Call, Siciliano, and Russum, the court found that Morton had not agreed to build a three-hour fire wall. The Appellate Division affirmed in an unpublished opinion, finding that "any error in the scope of the sequestration order was not 'clearly capable of producing an unjust result' and therefore does not require reversal of the judgment. *R.* 2:10–2." We granted certification, 126 *N.J.* 332, 598 *A.*2d 890 (1991), to examine the issues raised by the sequestration of Rezultz's officers, and now affirm the judgment of the Appellate Division.

## –II–

This case presents a conflict between the policy favoring sequestration of witnesses and the right of a party to be present throughout a trial. The purpose of sequestration is to discourage collusion and expose contrived testimony. 1 Stephen A. Saltzberg & Michael M. Martin, *The Federal Rules of Evidence Manual* 736 (5th ed. 1990) (hereinafter Saltzberg & Martin). According to Wigmore, sequestration, next to cross-examination, is "one of the greatest engines that the skilled man has ever invented for the detection of liars in a court of justice." 6 *Wigmore on Evidence* § 1838 (Chadbourn Rev. 1976) (hereinafter Wigmore); *see also State v. Zellers*, 7 *N.J.L.* 220, 226 (Sup.Ct.1824) ("We have often made rules * * * to prevent [witnesses] hearing what the other witnesses detail in their evidence, for the less a witness hears of another's testimony the more likely is he to declare his own knowledge simply and unbiassed.").

Sequestration of a party, however, raises countervailing considerations. As Wigmore, *supra*, at section 1841, notes:

[T]he danger of an attempt to falsify testimony and the utility of sequestration to expose it are most emphatic for a party who is a prospective witness. On the other hand, the party's aid in the conduct of the cause may be indispensable, and his absence is in any case hardly consistent with his general right to protect his interests by watching the conduct of the trial. [Footnote omitted.]

Generally speaking, the Sixth and Fourteenth Amendments to the United States Constitution entitle a criminal defendant to be present throughout the trial. Saltzberg & Martin, *supra*, at 736. Similarly, parties to a civil action should be exempted from sequestration because of their due process rights to participate in the conduct of the case. *Ibid.*

In New Jersey, decisions concerning witness sequestration have generally been left to the discretion of the trial court. *State v. DiModica*, 40 *N.J.* 404, 192 *A.*2d 825 (1963). Ordinarily, the sound exercise of that discretion requires granting a timely motion for sequestration. *Id.* at 413, 192 *A.*2d 825; *State v. Williams*, 29 *N.J.* 27, 46, 148 *A.*2d 22 (1959). Denial of

such a motion without an adequate basis is reversible error. *DiModica, supra,* 40 *N.J.* at 413, 192 *A.*2d 825; *see also* Wigmore, *supra,* at § 1839 (courts in jurisdictions where grant of motion is discretionary usually declare, "however, that in practice it is never denied, at any rate for an accused in a criminal case"). Most of the reported opinions involve appeals from trial court decisions to sequester witnesses in criminal cases. *DiModica, supra,* 40 *N.J.* at 413, 192 *A.*2d 825; *Williams, supra,* 29 *N.J.* at 46, 148 *A.*2d 22; *State v. Green,* 129 *N.J.Super.* 157, 165, 322 *A.*2d 495 (App.Div.1974); *State v. Williamson,* 125 *N.J.Super.* 218, 219–20, 310 *A.*2d 116 (App. Div.1973), *certif. denied,* 64 *N.J.* 511, 317 *A.*2d 723 (1974); *State v. Connolly,* 120 *N.J.Super.* 511, 517, 295 *A.*2d 204 (App.Div.), *certif. denied,* 62 *N.J.* 88, 299 *A.*2d 86 (1972); *State v. Duffen,* 104 *N.J.Super.* 302, 303, 250 *A.*2d 23 (App.Div.1969).

Research has uncovered only one case in which the reviewing court found reversible error in the sequestration of a party in the trial of a civil case. In *Smillie v. Lerner,* 10 *N.J.Misc.* 484, 159 *A.* 808 (1932), the former Supreme Court held that the trial court had committed reversible error in excluding the defendant from the trial during the testimony of one of his witnesses. The court stated: "It is settled that a party to an action * * * who is witness in the case, cannot be [sequestered] * * * although the parties are numerous." *Id.* at 485, 159 *A.* 808 (citation omitted).

Federal Rule of Evidence 615 strikes a balance between the need to sequester witnesses and the right of parties to be present at their own trials. That Rule provides:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

The first exception, for parties who are natural persons, is like the rule announced in *Smillie, supra,* 10 *N.J.Misc.* at 485, 159

*A.* 808. Existing New Jersey law also recognizes the third exception, that for witnesses essential to the presentation of a party's case. *State v. Talbot,* 135 *N.J.Super.* 500, 512, 343 *A.*2d 777 (App.Div.1975), *aff'd,* 71 *N.J.* 160, 364 *A.*2d 9 (1976); *State v. Hines,* 109 *N.J.Super.* 298, 307, 263 *A.*2d 161 (App. Div.), *certif. denied,* 56 *N.J.* 248, 265 *A.*2d 703, *cert. denied,* 400 *U.S.* 867, 91 *S.Ct.* 108, 27 *L.Ed.*2d 106 (1970).

■ At the heart of the present case is the remaining exception, that for an officer or employee designated as the representative of a party that is not a natural person. This exception complements the right of a party who is a natural person to be present in court. "As the equivalent of the right of a natural-person party to be present, a party which is not a natural person is entitled to have a representative present." *Fed.R.Evid.* 615(2) advisory committee's note. The Rule recognizes that in civil cases, "when a corporation is a party, some representative of the corporation should be entitled to be present at all times to insure that the corporation's interests are adequately protected." Saltzberg & Martin, *supra,* at 736. We find the exception to be a fair and reasonable corollary to the one precluding sequestration of a party who is a natural person. Consequently, we hold that an officer or employee of a corporation who is designated as the corporation's representative may not be sequestered. *Cf. Queen v. Washington Metro. Area Transit Auth.,* 842 *F.*2d 476, 481–82 (D.C.Cir.1988) (driver of bus that struck plaintiff may be designated as bus company's representative). The matter is of sufficient importance for us to refer the matter to our Committee on Civil Practice for consideration of the adoption of a Rule like *Federal Rule* 615.

Questions will doubtless arise about the implications of our holding. For example, a suit involving a major corporation might necessitate the presence of more than one representative throughout a trial. Hence, a question may arise whether a corporation is entitled to the presence of multiple representatives. To the extent that a person is essential to the presentation of the corporation's cause, both *Federal Rule* 615(3) and

our existing law, *Talbot, supra,* 135 *N.J.Super.* 500, 343 *A.2d* 777; *Hines, supra,* 109 *N.J.Super.* 298, 263 *A.*2d 161, permit that person to remain in court. See *Oliver B. Cannon & Son, Inc. v. Fidelity & Casualty Co.,* 519 *F.Supp.* 668, 678–79 (D.Del.1981) (although attorney may designate only one representative under exception (2), court permitted two witnesses to remain under exception (3)). At this time we do not purport to resolve all questions about the presence of non-essential multiple corporate representatives. We remit those questions, as we have remitted the sequestration of witnesses generally, to the sound discretion of the trial courts.

## –III–

■ Although the trial court would have been better advised not to sequester both of Rezultz's officers, the error does not compel reversal. This matter is not much more than a routine construction contract case in which the outcome depended on who said what to whom. The case was carefully prepared. Discovery was complete, and there were no surprises at trial. During the trial, moreover, Rezultz's attorney had several opportunities to consult with the sequestered officers. At no time did counsel ask for a recess for further consultation with them. Although the contested facts arose from conversations between various representatives of the parties, nothing suggests that Rezultz was prejudiced by its attorney's lack of access to the witnesses. We conclude that Rezultz was not prejudiced by the sequestration of its officers. See *R.* 2:10–2.

The judgment of the Appellate Division is affirmed.

*For affirmance* Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*Opposed*—none.