833 A.2d 692 (2003)
363 N.J. Super. 529
STATE of New Jersey, Plaintiff-Respondent,
In the Interest of V.M., Juvenile-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 9, 2003.
Decided October 30, 2003.
*693 Yvonne Smith Segars, Public Defender, for appellant (Kevin G. Byrnes, Designated Counsel, of counsel and on the brief).
Vincent P. Sarubbi, Camden County Prosecutor, for respondent (Jack L. Weinberg, Assistant Prosecutor, of counsel and on the brief).
Before Judges KESTIN, WINKELSTEIN and LARIO.
The opinion of the court was delivered by WINKELSTEIN, J.A.D.
For throwing rocks at moving cars, thirteen-year-old V.M. was adjudicated delinquent on five counts of criminal mischief and five counts of simple assault. The *694 trial judge placed him on probation for eighteen months. On appeal, the most significant issue is whether the trial judge erred when he sequestered the juvenile's mother from the courtroom during the juvenile's adjudicatory hearing (trial). We conclude that excluding her from the trial was a manifest abuse of discretion. Accordingly, we reverse V.M.'s adjudication of delinquency and remand for a new trial.
The facts are straightforward. V.M. was accused of throwing rocks at vehicles traveling on I-676 in the area of Morgan Boulevard in Camden on August 24, 2001. Two of the victims whose cars had been struck saw V.M. running from the scene, chased him and caught him. V.M. denied being involved. He said, "they're always blaming me," and, "it was them." He then started to cry. Multiple witnesses at the scene identified him as the offender.
At trial, before witnesses were called, defense counsel advised the court that V.M.'s mother "may be a witness," but asked, "that she nonetheless be allowed to sit in the courtroom." V.M.'s mother was his only parent in attendance. The prosecutor objected, arguing that if V.M.'s mother was going to be a witness, "I would ask that she step out." The court responded, "Okay. Like all other witnesses, I assume" After agreeing that the state trooper who was scheduled to testify should also be sequestered, the court stated, "Reciprocal order. All right. Mom, if you'll have a seat outside ... they will all be sequestered." Although she was sequestered, V.M.'s mother was not called as a witness.
During the trial, five witnesses whose cars were struck by rocks were called by the State. With one exception, each either identified V.M. as the rock-thrower or testified that rocks were thrown by an African-American juvenile with an "Afro" hairstyle, wearing a white t-shirt. V.M. matched that description.
New Jersey State Trooper Kavanagh[1] was dispatched to the area where the incident occurred. Upon his arrival, he observed the vehicles that had been struck by rocks were lined up on the shoulder of the road. He obtained statements from both passengers and drivers of the vehicles. Four victims informed the trooper that "a young male, black, with an Afro and white t-shirt had thrown rocks at their vehicles." After the two individuals who had chased V.M. brought him back to the scene, multiple victims identified V.M. to the trooper as the juvenile who had thrown rocks at their vehicles. V.M., again, denied the allegations.
During the course of the trial, the defense called three witnesses. Included was Norma Reyes, who was offered to testify as a character witness for V.M. The judge barred her testimony.
Testifying in his own defense, V.M. denied throwing rocks at the vehicles. He said he remembered seeing a group of "black kids with white t-shirts and Afros" in the area where the incident took place.
In adjudicating defendant delinquent, the judge said, "four of the five [witnesses] who testified clearly could articulate ... that it was [V.M.].... In my mind, that is compelling beyond a shadow of a doubt."
We now turn to the primary issue on appeal: whether the court erred when it sequestered V.M.'s mother from the courtroom during the trial. Whether to sequester a witness is generally discretionary with the trial court. State v. DiModica, 40 N.J. 404, 413, 192 A.2d 825, 830 (1963). The use of sequestration prevents "prospective witnesses from hearing what *695 the other witnesses will detail in their evidence, `for the less a witness hears of another's testimony the more likely is he to declare his own knowledge simply and unbiased.'" Ibid. (quoting State v. Zellers, 7 N.J.L. 220, 226 (Sup.Ct.1824)). "Ordinarily, the sound exercise of [the trial court's] discretion requires granting a timely motion for sequestration." Morton Bldgs., Inc. v. Rezultz, Inc., 127 N.J. 227, 233, 603 A.2d 946, 949 (1992); see also N.J.R.E. 615 (order sequestering witness may be entered at request of party or on court's own motion).
These general principles, when applied to the vast majority of witnesses, are well founded. However, whether to sequester the parent of a juvenile in attendance at his or her child's adjudicatory hearing implicates additional considerations not applicable to other witnesses. Although our research has uncovered no New Jersey precedent directly on point, the importance of the presence of an accused juvenile's parents at critical stages of the juvenile delinquency process is firmly established. The New Jersey Code of Juvenile Justice, N.J.S.A. 2A:4A-20 to -88 (Code), explicitly gives an accused juvenile's parent the right to participate in the juvenile's detention hearing, N.J.S.A. 2A:4A-38, as well as the right to apply to the court to include public attendance during any court proceeding in the delinquency case. N.J.S.A. 2A:4A-60i(1). Indeed, the law recognizes that a juvenile's family members need to be involved in both the adjudicatory and rehabilitative process. See N.J.S.A. 2A:4A-21; N.J.S.A. 2A:4A-42.
In the context of a police interrogation of a juvenile, the New Jersey Supreme Court has discussed the need for a juvenile to have a family member present. See State v. Presha, 163 N.J. 304, 748 A.2d 1108 (2000). Justice Verniero, speaking for the Court, said: "the parent serves as advisor to the juvenile, someone who can offer a measure of support in the unfamiliar setting of the police station.... Parents are in a position to assist juveniles in understanding their rights, acting intelligently in waiving those rights, and otherwise remaining calm in the face of an interrogation." Id. at 314-15, 748 A.2d 1108. See also State v. A.G.D., 178 N.J. 56, ____, 835 A.2d 291, ____ (2003) (juvenile's immaturity limits his ability to make knowing intelligent waiver of rights, requiring added layer of protection).
We recognize that during an adjudicatory hearing the juvenile is represented by counsel, which is generally not the case when a juvenile is interrogated at a police station. Even so, the reasons for permitting a juvenile's parent to be present during the police interrogation are equally applicable at the juvenile's trial. In most cases, the juvenile's attorney is an assigned public defendera stranger to the juvenile. The juvenile's parent provides a degree of comfort and support for the juvenile in an unfamiliar setting, as well as an added layer of protection, that the child's attorney does not.
There exists yet another, and more concrete, reason to preclude the sequestration of the parent of a juvenile accused of delinquency. Rule 5:20-4 expressly provides that parents of the juvenile are necessary parties "to every proceeding in all juvenile delinquency actions." This Rule implicitly, if not explicitly, affords the accused juvenile's parents the same right as the juvenile to remain in the courtroom during the juvenile's trial.
The Code provides a juvenile charged with an offense with the broad protections available to an adult charged with a crime, except for "[t]he right to indictment, the right to trial by jury and *696 the right to bail." N.J.S.A. 2A:4A-40. Among the rights afforded to an adult, is the right to be present in court during his or her trial. See Smillie v. Lerner, 10 N.J. Misc. 484, 485, 159 A. 808 (Sup.Ct.1932) ("[t]he right of a party to be present in court when a case in which he is interested is being tried seems too fundamental to admit of dispute. If a defendant may be excluded from a trial involving his right and privileges, his interest may be seriously jeopardized."); see also 6 Wigmore, Evidence, § 1841(2) (Chadbourn rev. 1976) (noting that "the party's aid in the conduct of the cause may be indispensable, and his absence is in any case hardly consistent with his general right to protect his interest by watching the conduct of the trial.") This fundamental right of a partyto be present during trialis equally applicable to a parent in a juvenile delinquency proceeding as a result of the adoption of Rule 5:20-4 by the New Jersey Supreme Court.
This conclusion is further supported when we weigh the parent's right to be present in the courtroom against the acknowledged goals of sequestration. On balance, the right of the juvenile's parent to be present during the juvenile's trial is paramount.
A judge, sitting without a jury in an adjudicatory hearing, is capable "of sorting through admissible and inadmissible evidence without resultant detriment to the decision-making process...." State v. Kern, 325 N.J.Super. 435, 444, 739 A.2d 969, 973 (App.Div.1999). "Trained judges have the ability `to exclude from their consideration irrelevant or improper evidence and materials which have come to their attention.'" State v. Medina, 349 N.J.Super. 108, 130, 793 A.2d 68, 80 (App.Div.) (quoting State v. Kunz, 55 N.J. 128, 145, 259 A.2d 895, 904 (1969)), certif. denied, 174 N.J. 193, 803 A.2d 1165 (2002). Yet, while a judge is in a position to make a reasoned evaluation of whether a witness's testimony may have been shaped by testimony the witness overheard in the courtroom, the benefits denied to a juvenile by the exclusion of a parent during the trial cannot be measured. Accordingly, we are loath to deny a juvenile the support and additional protection that may be supplied by a parent during the course of the juvenile's trial.
Consequently, regardless of whether a juvenile's parent will be called as a witness, that parent has the right to remain in the courtroom during the juvenile's adjudicatory hearing. A sequestration order removing the parent from the courtroom is harmful error. See D.C.A. v. State, 135 Ga.App. 234, 217 S.E.2d 470, 471-72 (1975) (under Georgia's juvenile code, parents of juveniles entitled to be present during delinquency adjudication); but see Appling v. The State, 221 Ga.App. 162, 470 S.E.2d 761 (1996) (sequestering juvenile's mother during trial not prejudicial and not grounds for reversal when juvenile tried as adult).
Furthermore, still another reason exists why the court's decision to exclude V.M.'s mother from the delinquency adjudication hearing was a manifest abuse of discretion. Aside from her being a potential witness, the court was not told of the anticipated subject matter of her testimony. Without that information, the judge was not in a position to decide the sequestration request. See Lopez v. House of Coffee, Inc., 332 N.J.Super. 364, 366, 753 A.2d 755, 756 (Ch.Div.1998) (proper exercise of discretion to sequester contemplates context in which request made and whether person to be sequestered is a party).
The reason for separating opposing witnesses is explained by Dean Wigmore: "[i]f the hearing of an opposing witness *697 were permitted, the listening witness could thus ascertain the precise points of difference between their testimonies, and could shape his own testimony to better advantage for his cause." 6 Wigmore, Evidence, supra, § 1838(1). However, the corollary is also true. A witness testifying about different topics or events than the other witnesses would have no reason to modify his testimony. In other words, if V.M.'s mother, who was not present during the rock-throwing incident, would have testified about another subjectfor example as an alibi or character witnessshe would have gained no advantage by hearing what the other witnesses said about the underlying event, eliminating the need to sequester her. Yet, the court, without a proffer of her contemplated testimony, merely asked her to leave the courtroom, "like all other witnesses." Thus, even in the absence of a blanket right of a parent of an accused juvenile to be present during the juvenile's trial, the record here did not support sequestration of V.M.'s mother.
V.M. has raised three other points: 1) the court erred by permitting Trooper Kavanagh to testify to what was said at the scene of the incident by victims of the rock-throwing who were not called to testify at trial; 2) the court erroneously barred Norma Reyes from providing character testimony; and 3) the verdict was against the weight of the evidence. Each argument is moot in light of our decision to order a new trial. We comment briefly, however, on the first and second points.
Defendant claims the court improperly permitted Trooper Kavanagh to inject testimony of witnesses to the rock-throwing incident who did not testify at trial. Without identifying the witnesses, the trooper said: "Several of the victims at the scene stated that [V.M.] was the juvenile who was throwing rocks at the vehicles." That statement was hearsay and inadmissible. See N.J.R.E. 801(c).
Defendant's remaining argument is that the court improperly precluded Reyes from testifying about V.M.'s character. We agree. A person charged with a criminal offense has a right to present evidence of his character to raise a reasonable doubt about whether he committed the offense. State v. Siciliano, 21 N.J. 249, 260-61, 121 A.2d 490, 496-97 (1956); N.J.R.E. 404(a)(1); Biunno, Current N.J. Rules of Evidence, comment 3 on N.J.R.E. 404(a)(1) (2003). On retrial, Reyes may be permitted to testify to V.M.'s character.
Reversed and remanded for a new trial.
NOTES
[1] Trooper Kavanagh's first name is not included in the record.