Lawrence R. SPERBERG,
Plaintiff-Appellant,

v.

GOODYEAR TIRE & RUBBER CO.,
Defendant-Appellee.

No. 74–2063.

United States Court of Appeals,
Sixth Circuit.

July 3, 1975.

Certiorari Denied Nov. 17, 1975.
See 96 S.Ct. 395.

Paul A. Weick, Weick & Genovese, Akron, Ohio, Thomas M. Marshall, New York City, for plaintiff-appellant.

Leslie W. Jacobs, Thompson, Hine & Flory, Cleveland, Ohio, Ford W. Brunner, Akron, Ohio, Hugh A. Chapin, New York City, Leo J. Biegenzahn, Los Angeles, Cal., for defendant-appellee.

Before PECK, McCREE and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

In this action the plaintiff sought damages for the defendant's alleged infringement of two method or process patents. One of the patents claimed discovery or invention of "a worthwhile non-destructive method or process of performing tire tests to determine useful tire life," while the other claimed discovery or invention of "a worthwhile non-destructive method or process of performing tire tests to determine wear susceptibility of tires." The plaintiff had originally filed suit as a class action alleging infringement by a large number of tire manufacturers. After the district court refused to certify the class action, the plaintiff filed separate actions against the five largest tire companies in the country. One of these companies, Uniroyal, was dismissed for lack of venue.

The plaintiff and the defendants in the four pending cases in the district court then entered into a stipulation by which it was agreed that the case against Goodyear would be tried first to a jury and that the plaintiff and each of the four defendants—the Goodyear Tire and Rubber Company, the Firestone Tire and Rubber Company, the General Tire and Rubber Company and B. F. Goodrich Company—would be bound by the judgment in the Goodyear case on the issue of validity or enforceability of the patents. Firestone also agreed to be bound by the judgment in the Goodyear case on the issue of infringement, but the other two defendants would be entitled to separate trials on this issue. Thereafter, Goodyear moved the court to enter an order "restraining the parties and their counsel from making reference to the pendency of other related cases and from informing the jury of the content, substance or spirit . . . " of the stipulation previously entered into. Goodyear filed a brief with its motion, pointing out that the trial court has broad discretion

in the admission or rejection of evidence which might be prejudicial. Goodyear argued that the defendants in the other cases would not be represented at the Goodyear trial and that they might easily be prejudiced by references to the plaintiff's pending cases against them.

The court held a hearing on the motion at which plaintiff's counsel made the following argument:

Now, I think the jury is entitled to know the circumstances which pertain to this particular case. I think to put the jury into isolation and say you can only know that there is Goodyear here when, in fact, Goodyear, as well as Firestone, are completely bound by this trial, as well as General and Goodrich with respect to the interwoven issue of validity. I think it is important that the jury know what they are actually trying and not live in a vacuum created without that kind of knowledge that any other member of the public knows.

We have gone through the entire discovery in this case. It is a consolidated case. We have all dealt with it with all defendants being real and present, and I think it is wholly illusory to put the matter to the jury on just the matter of Goodyear's presence.

I have serious question whether the plaintiffs would get a fair trial under those circumstances.

THE COURT: Well, as I say, my inclination is to grant the motion, and in the event that you fail to convince me to the contrary by some authority, your exceptions will be noted, Mr. Marshall.

The plaintiff did not submit any authorities to the court on the subject or advise the court of any bases for his objection other than the statement quoted above.

So far as the record shows, the order in question was invoked only twice during the trial. During the opening statement by counsel for Goodyear, the court, without an objection or motion by the parties, cautioned attorneys not to refer to any other tire companies. Shortly thereafter counsel for Goodyear requested a clarification of the scope of the order "vis-a-vis the mentioning of other rubber companies." He pointed out that the primary witness for Goodyear, Mr. Robert Dunlop, had worked for Goodrich for nine years and that items of prior art had been developed by people from various other tire companies. The court then ruled that such evidence would be admissible "without referring directly, indirectly, or inferring that there is other outstanding litigation concerning this same patent as against those companies. That is the scope of the order."

On appeal, Sperberg refers to the order as a "gag rule" and asserts that the application of this order by the district court denied him a fair trial. Specifically it is claimed that because of this rule, Sperberg was unable to get before the jury the substantial basis for a finding that the witness Dunlop was biased in favor of Goodyear. Dunlop was presented as an expert witness, and it was shown upon direct examination that he had worked for B. F. Goodrich for nearly ten years and for General Tire for approximately two years. He testified that after leaving General Tire he became an independent consulting engineer, specializing in tire development and manufacturing problems and that since 1955 he had operated Smithers Laboratories, an independent testing organization. He stated that he had testified in court 50 or 60 times, mostly in product liability cases, both for and against tire companies, and that he had appeared as a witness in one other patent case. He testified as an expert that he could find no correlation between the durability or wear susceptibility of tires and the presence of "force variation," which was diametrically opposed to the major thesis of Sperberg's two patents involved in the case. This was undoubtedly the most persuasive testimony in the case in support of Goodyear's claim that neither patent was valid.

Cross-examination of Dunlop fills approximately 200 pages of the transcript. It was brought out that he had testified on behalf of Goodyear in some of his previous court appearances and that he had appeared for Firestone in the patent case mentioned in his testimony on direct examination. The witness then testified that the gross receipts of Smithers Laboratories were approximately $1,000,000 per year and that he was the owner of 45 to 50 percent of the company. He further estimated that Smithers did $15,000 to $20,000 per year of business with Goodyear and that 35 percent of all of its business was done with tire companies in this country. In his reply brief, Sperberg concedes that the witness Dunlop could have been questioned further about his relationships with various other companies in the American tire industry, but claims this would have been meaningless to the jury without knowledge that three other tire companies were vitally interested in the outcome of this litigation. It is claimed that plaintiff was denied his right to let the jury know the identity of the real parties in interest and his related right to develop the bias of Dunlop as the primary witness for the defense, since the rule in question made effective cross-examination of Dunlop impossible. At no time was this basis for the plaintiff's objection to the order stated to the trial judge.

The Sixth Amendment guarantee of the right to confrontation of witnesses requires an opportunity for cross-examination of all prosecution witnesses in criminal cases. The chief purpose of such cross-examination is frequently to show bias or unreliability. In *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), the Supreme Court held that it was an abuse of discretion to limit cross-examination by an order *in limine* that prevented an inquiry designed to show that testimony of a witness was either untrue or biased. More recently the Supreme Court has held that the partiality or bias of a witness is always relevant and that a court may not restrict cross-examination whose purpose is to show the reason for bias or lack of credibility of a witness. The Court found that the partial cross-examination which had been permitted on the subject of bias was not sufficient since the cross-examining party is entitled to a meaningful inquiry which will disclose to the jury all possible facts upon which the jury may legitimately draw to reach an inference of bias or unreliability. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

In *Majestic v. Louisville and Nashville Railroad Company,* 147 F.2d 621, 627 (6th Cir. 1945), this court held that all facts and circumstances which tend to show bias or interest in litigation by a witness may properly be developed on cross-examination. In this civil case the court referred to the "undoubted right of a party to cross examine witnesses to show their interest or bias." *Id.* at 627. In *Thurber Corp. v. Fairchild Motor Co.,* 269 F.2d 841 (5th Cir. 1959), the court by order kept from the jury in a patent case the fact that a third party had entered into an agreement with one of the defendants by which the third party would assist in the defense and share the expense of the law suit. Objection was made to the order excluding this information from the jury, and it was held that the objection made at the time of entry of the order was sufficient to preserve the issue for appellate review. Subsequently, the defendant introduced two witnesses, one of whom was a consultant to the undisclosed interested party and the other an employee of that party. The court of appeals reversed for a new trial, holding that the effect of exclusion of information of possible bias and interest of two witnesses for the defendant could not be fully evaluated since it would be impossible to know how the jury would have reacted to this information. The court found that it was impossible to hold that substantial rights of the plaintiff had not been affected by the order or that it was harmless error. *Id.* at 844.

Without questioning the established principles set forth in the foregoing cases, Goodyear points out that the plaintiff did extensively cross-examine the witness Dunlop and that the jury learned that he had previously worked for Goodrich and General Tire, two of the three un-named parties. Likewise, the testimony disclosed that he had testified on behalf of all tire companies, including Firestone, the third un-named party, and Goodyear. More significantly, the extent of the dependence by Smithers Laboratories on the American tire industry was disclosed to the jury. Thus it is argued that the jury had all of the information necessary for it to determine whether or not Dunlop was a biased witness. Goodyear relies upon the decision in *Kanatser v. Chrysler Corp.,* 199 F.2d 610 (10th Cir. 1952), in which Judge Murrah held that the trial judge has broad discretion in determining the scope of cross-examination and that where the possible interest of a witness in the outcome of a trial is clear to the jury from the cross-examination permitted, it is not an abuse of discretion to limit the extent and scope of such cross-examination.

■ Goodyear further maintains that the purpose of the order prohibiting reference to the three pending cases was to keep extraneous issues out of the trial of the Goodyear case and that the court was justified in excluding evidence on collateral matters, the introduction of which would have lengthened the trial, confused the issues and possibly misled the jury. *Olin-Mathieson Chemical Corp. v. Allis-Chalmers Manufacturing Co.,* 438 F.2d 833 (6th Cir. 1971). In the *Olin-Mathieson* case this court cited the then proposed rules of evidence, specifically proposed Rule 4–03, which has been modified and adopted effective July 1, 1975 as Rule 403, providing as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Orders *in limine* which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise. In the present case the plaintiff made no attempt to require the witness Dunlop to answer further questions about his relations with the companies involved in the three pending suits, saying that he was prevented from doing so by the standing order. In the absence of such an order, plaintiff would have been required to present the issue in the specific context of cross-examination of this witness and obtain a ruling from the court either requiring or excusing the witness from answering particular questions or a particular line of questioning.

■ As the record stands before this court, however, the plaintiff never made known to the district court his claim that he was being denied a fair trial because his right to fully cross-examine the witness Dunlop was prevented by the order of the court. At the very time that the court was requested to define the scope of the order, counsel for Goodyear pointed out that Mr. Dunlop would be the primary witness for Goodyear and that there might be a problem with the rule since Mr. Dunlop had previously worked for Goodrich. During this discussion between court and counsel, the attorneys for plaintiff made no further objection to the order and did not relate the order to any anticipated problem in cross-examining the witness Dunlop. Under these circumstances, and in view of the extensive cross-examination which elicited information from which the jury might infer bias and interest on the part of Dunlop, we find no abuse of discretion. *Kanatser v. Chrysler Corp., supra.* If counsel felt that plaintiff was being denied a fair trial because of limitations

on cross-examination it was their obligation to present this matter to the trial court and obtain a specific ruling on this claim of error. Rule 46, Fed.R.Civ.P. We note also that in his motion for a new trial the plaintiff did not acquaint the trial court with his present claim that the court's order so limited cross-examination as to deny him a fair trial.

As his second ground for reversal the plaintiff states that "the court committed prejudicial error in failing to give additional instructions to the jury as requested by Sperberg." The district court instructed the jury on the plaintiff's burden to prove three material elements of validity of each patent. It then charged the jury on presumptions generally and followed this with a specific instruction that "the law presumes the patents here in question to be valid, in the absence of clear and convincing evidence to the contrary; presumes further that the Patent Office acted correctly in issuing the patents." At a later point in the charge the court again instructed that the issuance of a patent raises the presumption that the patent is valid and explained that the presumption of validity "is merely a rule of evidence which places the burden upon one who disputes the validity of a patent to come forward with clear and convincing evidence that the Patent Office acted erroneously . . ." in issuing the patent. Finally the court instructed: "If, however, it be your conclusion that the defendant has failed to prove by clear and convincing evidence one or more of its affirmative assertions of invalidity as to all claims of one or both of said patents, then, in that event you shall find one or both of said patents to be valid and you will proceed to determine if the defendant infringed one or both of the patents you herein found to be valid."

The plaintiff argues that these instructions are correct as far as they go, but that the court "should have instructed the jury that the issuance of the patent was cogent evidence from which a

presumption arises, that, by itself, carries Sperberg's burden of proof as to validity in the absence of clear and convincing evidence to the contrary."

We have read the court's entire charge to the jury and believe it correctly presented the issues with respect to validity of the patents. There is no reason to believe that the jury was in any way confused as to the burden of proof in this case. The fact is that the plaintiff had the burden of proving the validity of his patent. The issuance of letters by the Patent Office, because of the statutory presumption of validity, makes a *prima facie* case for a plaintiff asserting the validity of his patent. This presumption has no independent evidentiary value, however, but only serves to place the burden of proof on a party who asserts invalidity. *Rains v. Niaqua, Inc.*, 406 F.2d 275, 278 (2d Cir.) cert. denied 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969). As the Supreme Court pointed out in *Del Vecchio v. Bowers*, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229 (1935), a statutory presumption "falls out of a case" when the party against whom the presumption works meets his burden of offering evidence sufficient to justify a contrary finding. *Id.* at 286, 56 S.Ct. 190. We find no basis for believing that the jury in this case understood the instructions on validity to mean anything other than that the plaintiff entered the case with a presumption that both patents were valid and that the jury could only find them invalid if the defendant introduced clear and convincing evidence of invalidity. Since neither party questioned the "clear and convincing" standard of proof applied by the district court we do not reach the question in this case of whether or not this is the proper standard to be applied where a claim of invalidity is based on alleged obviousness.

The plaintiff also complains that the trial court ordered a separation of witnesses at the beginning of his re-

buttal without requiring such separation in the earlier stages of the trial. Neither party requested that the witnesses be separated at the beginning of the trial. However, as plaintiff called his first rebuttal witness, counsel for Goodyear moved the court to require a separation of the rebuttal witnesses. The court granted the motion and the plaintiff presented three witnesses thereafter. The plaintiff recognizes that the trial court has broad discretion in determining whether to order the exclusion of witnesses from the courtroom, but asserts that under the circumstances of this case it was an abuse of discretion to apply this rule only to his rebuttal witnesses. Of course, plaintiff could have requested such an order for the defendant's witnesses and did not do so. There is no federal rule requiring that a request for separation of witnesses be made at any particular stage of a trial. We find no abuse of discretion in the determination by the trial judge that Goodyear's motion for separation of rebuttal witnesses should be granted. The cases cited by the plaintiff, *Powell v. United States,* 208 F.2d 618 (6th Cir. 1953), and *Kaufman v. United States,* 163 F.2d 404 (6th Cir. 1947), state the general rule that such a trial order will be reversed only for abuse of discretion but do not support plaintiff's argument that there was an abuse of discretion in the instant case.

The final issue on appeal is whether the court committed prejudicial error in submitting interrogatories to the jury "which comprised mixed questions of law and fact." The plaintiff consistently opposed the submission of interrogatories to the jury on the ground that the issues were so complicated that the jury would be confused by the interrogatories. The very fact of complicated issues is probably the reason that so few patent cases are tried before juries. Nevertheless, it was the plaintiff who requested the jury in this case, and the court was required to submit the issues to the jury in such a manner as to ascertain whether the jury

had properly applied the law given in the instructions to its specific findings. The instructions which the jury received were quite comprehensive and contained an accurate statement of the law applicable to the issues in this case. In fact, the only objection to the instructions by the plaintiff concerned the burden-of-proof question previously dealt with in this opinion. Otherwise, the court's charge appears to have satisfied the plaintiff.

Careful comparison of the court's instructions with the interrogatories submitted to the jury reveals that the court instructed the jury as to the governing law with respect to each question propounded in interrogatories 1 through 18. Following interrogatory # 18 the court then directed the jury to examine its answers to certain interrogatories and to state, in accordance with specific instructions on the effect of such answers, whether it found each of the patents to be valid or invalid. The jury responded, correctly following the court's directions, that each of the patents was invalid. It was not necessary for the jury to answer interrogatories 19 and 20 since they applied only in the event that either or both of the patents should have been found valid. Nevertheless, the jury did answer these interrogatories and indicated that neither of the patents had been infringed. It is clear that interrogatories 1 through 18 required the jury to make only factual determinations. The two un-numbered interrogatories between numbers 18 and 19 required the jury to answer the ultimate question of validity of each of the patents, but the jury was not permitted to reach this answer independently of its findings. These questions merely required the jury to canvass its previous answers and to make the ultimate finding which the law requires on the basis of these factual findings. The answers to these interrogatories were actually surplusage. The general verdict of the jury in favor of Goodyear was consistent with the answers to the factual questions contained

in interrogatories 1 through 18 and the court would have been required to enter judgment for the defendant thereon. Rule 49(b) Fed.R.Civ.P.

■■■■■ Plaintiff insists that it was reversible error to submit the interrogatories in this case because they contained mixed questions of law and fact. In *Carpenter v. Baltimore and Ohio Railroad Company*, 109 F.2d 375 (6th Cir. 1940), we held that interrogatories must submit to the jury only factual questions from which legal propositions may be deduced and that it is improper to pose questions of law or mixed questions of fact and law in interrogatories. We do not believe that the *Carpenter* decision means that it is improper under all circumstances to submit mixed questions of law and fact to a jury. Rule 49(b) provides that when a jury is required to render a general verdict accompanied by answers to interrogatories "[t]he court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict . . . ." In *Kissell v. Westinghouse Electric Corp.*, 367 F.2d 375, 376 (1st Cir. 1966), the court, in discussing *Carpenter v. Baltimore and Ohio Railroad Company, supra,* said, "It would be a purposeless restriction to say that special interrogatories cannot be mixed questions of law and fact, provided that the jury is properly instructed as to the law." Similarly, in *Merchant's Fast Motor Lines, Inc. v. Lane*, 259 F.2d 336, 338 (5th Cir. 1958), it was held that mixed questions of law and fact may be submitted "only if the jury is instructed as to the legal standards which they are to apply. *Jackson v. King*, 5 Cir., 1955, 223 F.2d 714, 718." The trial court has broad discretion in determining the form and content of interrogatories to the jury under Rule 49(b). *Tennessee Consolidated Coal Co. v. United Mine Workers of America*, 416 F.2d 1192, 1200 (6th Cir. 1969). Finding as we do that interrogatories 1 through 18 required purely factual findings by the jury and that the court ade-

quately instructed the jury with respect to its answers to the interrogatories containing questions of law, we find no prejudicial error in the procedure adopted by the trial court.

The judgment of the district court is affirmed.