Robert JACKSON III

v.

**COUNTY OF SAN BERNARDINO et al.**

**Case No. EDCV 13-1650 JGB (DTBx)**

United States District Court, C.D. California.

Signed July 05, 2016

Dale K. Galipo, Law Offices of Dale Galipo, Woodland Hills, CA, for Robert Jackson III.

Anthony M. Sain, Eugene P. Ramirez, Lucas E. Rowe, Manning and Kass Ellrod Remirez Trester LLP, Los Angeles, CA, Algeria R. Ford, James H. Thebeau, San Bernardino, CA, for County of San Bernardino et al.

**Proceedings: Order re: Pretrial Motions (Dkt. Nos. 72, 77-85) (IN CHAMBERS)**

The Honorable JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

Before the Court are five motions in limine filed by Plaintiff Robert Jackson III, (Dkt. Nos. 81-85); four motions in limine filed by Defendants Bannes and the County of San Bernardino, (Dkt. Nos. 77-80); and a motion to facilitate jury selection through written questionnaire filed by Defendants, (Dkt. No. 72). The Court held a pretrial conference and heard argument on the motions on June 27, 2016.

## I. BACKGROUND

On October 27, 2011, several Deputy Sheriffs with the San Bernardino County Sheriff's Department ("SBSD") arrived at the residence of Plaintiff Robert Jackson III ("Plaintiff" or "Jackson") in Apple Valley, California, to investigate a crime. (First Amended Complaint ("FAC") ¶¶ 11, 12, Dkt. No. 35.) Jackson refused to come out of the house to speak with the deputies. (Id. ¶ 12.) After a several hours-long standoff, Jackson, who was hiding in the attic, removed a vent cover on the side of the house and began climbing out of it. (Id. ¶¶ 12, 13.) Jackson alleges that Defendant Detective Bannes ("Bannes") struck him with a Taser dart while he was hanging out of the attic vent, which immobilized him and caused him to fall to the ground. (Id. ¶ 13.) Bannes and Defendant the County of San Bernardino (the "County") dispute Jackson's account. They allege that Jackson fell from the vent of his own accord and that Bannes struck him with the Taser dart after Jackson had already fallen. Jackson sustained serious injuries as a result of the fall, including paralysis below the waist.

Plaintiff alleges three causes of action against Defendants: (1) a claim for excessive force against Bannes pursuant to 42 U.S.C. § 1983; (2) a claim for battery/excessive force under California law against Bannes and the County; and (3) a claim for negligence under California law against Bannes and the County. (See First Amended Complaint ("FAC") Dkt. No. 35, and Dkt. No. 62.) On April 15, 2016, Defendants filed a motion for summary judgment as to all claims against them. (Dkt. No. 57.) The Court denied Defendants' motion on June 13, 2016, holding that a triable issue of fact exists as to whether Jackson was shot with the Taser dart while he was in an elevated position in the attic vent or only after he fell. (MSJ Order at 11, Dkt. No. 115.) The Court found that this disputed fact is material to all three of Jackson's claims against Defendants. (Id. at 15-16.) The Court also denied Defendants' motion for summary judgment as to Jackson's prayer for punitive damages. (Id. at 16.)

On May 9, 2016, Defendants filed four motions in limine, (Dkt. Nos. 77-80), and one motion to facilitate jury instruction by written questionnaire, (Dkt. No. 72). That same day, Jackson filed five motions in limine. (Dkt. Nos. 81-85.) On June 27, 2016, the Court held a pretrial conference and

heard argument on the motions. Trial is set to begin July 12, 2016.

As a preliminary matter, Defendants' motion to facilitate jury selection by written questionnaire is DENIED. (Dkt. No. 72.) The Court finds that conducting jury voir dire in open court will be sufficient to empanel a fair, unbiased jury. The Court now turns to the parties' respective motions in limine.

## II. LEGAL STANDARD

■ A party may use a motion in limine to exclude inadmissible or prejudicial evidence before it is actually offered at trial. See Luce v. United States, 469 U.S. 38, 40 n. 2, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). A motion in limine is "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 440 (7th Cir.1997). It also reduces the likelihood that unduly prejudicial evidence will ever reach the jury, thereby relieving the trial judge from the formidable task of neutralizing the taint of any prejudicial evidence. See Brodit v. Cambra, 350 F.3d 985, 1004–05 (9th Cir.2003) (citation omitted).

■ Motions in limine that seek exclusion of broad and unspecific categories of evidence, however, are generally disfavored. Sperberg v. The Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975). Courts have recognized that it "is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins v. Kmart Corp., 487 F.Supp.2d 1216, 1218 (D.Kan.2007). Therefore, when confronted with this situation, "a better practice is to deal with questions of admissibility of evidence as they arise [in actual trial]" as opposed to tackling the matter in a vacuum on a motion in limine. Sperberg, 519 F.2d at 712; see United States v. Marino, 200 F.3d 6, 11 (1st Cir.

1999) (recognizing that proffered evidence can be more accurately assessed in the context of other evidence).

■ Further, "a motion in limine should not be used to resolve factual disputes or weigh evidence." C & E Services, Inc. v. Ashland Inc., 539 F.Supp.2d 316, 323 (D.D.C.2008). That is the province of the jury. See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Nor should a motion in limine be used as a substitute for a motion for summary judgment. C & E Services, 539 F.Supp.2d at 323.

Regardless of a court's initial decision on a motion in limine, it may revisit the issue at trial. See Fed. R. Evid. 103, advisory committee's note to 2000 Amendment ("Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered."); Luce, 469 U.S. at 41–42, 105 S.Ct. 460 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."). "The Supreme Court has recognized that a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." United States v. Bensimon, 172 F.3d 1121, 1127 (9th Cir.1999) (citing Luce, 469 U.S. at 41–42, 105 S.Ct. 460). Rule 103 does not require a court to rule on a motion in limine. CFM Commc'ns, LLC v. Mitts Telecasting Co., 424 F.Supp.2d 1229, 1233 (E.D.Cal. 2005) (citation omitted).

## III. DISCUSSION

### A. Plaintiff's Motions in Limine

### 1. Plaintiff's Motion in Limine No. 1

■ Plaintiff moves to exclude any evidence of his alleged involvement in "any theft that precipitated the incident, any

prior similar acts, and any evidence of Plaintiff's alleged involvement in the theft of the vehicle found on Plaintiff's property" on the grounds that such evidence is irrelevant and unduly prejudicial. (Pltf. MIL 1, Dkt. No. 81.) Plaintiff contends that Bannes did not receive any specific information regarding Plaintiff's visit to the construction lot two weeks prior to the theft of the steel beams, nor did he receive specific information as to what or how much was stolen or what vehicle Plaintiff allegedly stole.

Defendants oppose Plaintiff's motion on the grounds that Bannes was in fact aware of this information. (Pltf. MIL 1 Opp., Dkt. No. 90.) Information that Bannes received prior to his use of force regarding the crimes the SBSD were investigating that day is relevant and admissible under Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), as evidence of "the severity of the crime at issue," a factor the jury is to consider in determining whether Bannes' use of force was reasonable. Therefore, to the extent Bannes testifies that he was aware of this information, it is relevant and admissible. However, such evidence will be admitted with a limiting instruction that the jury consider Jackson's prior alleged conduct only to determine whether Bannes' actions were reasonable under the circumstances and for no other purpose. Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1328 (9th Cir. 1995).

■ To the extent Bannes was unaware of the details of the alleged thefts prior to his use of force, such evidence is not admissible. This evidence is not necessary "to set the contextual stage for the jury," as Defendants contend. It will be sufficient for them to understand that Jackson was under investigation for a crime and that he was resisting arrests, facts which Jackson does not dispute.

Neither is this evidence is admissible under Boyd v. City & Cty. of San Francisco, 576 F.3d 938, 944 (9th Cir.2009), as Defendants contend. In Boyd, a case in which survivors of a decedent alleged that law enforcement officers used excessive force when they shot and killed the decedent, the Ninth Circuit concluded that evidence regarding the decedent's criminal history and prior acts on the day of the incident was properly admitted. Id. at 944–945. The evidence was admitted in the context of a "suicide by cop defense" because the prior acts made it more probable that the decedent was trying to provoke a police shooting, rather than surrender. Id. The Ninth Circuit held that, "where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible." Id. at 944.

Here, by contrast, Defendants do not assert a "suicide by cop" defense, and Jackson's motivation or intention to provoke the deputies to shoot him is not at issue. See Valtierra v. City of Los Angeles, 99 F.Supp.3d 1190, 1194 (C.D. Cal. 2015) ("defendants do not advance a 'suicide-by-cop' theory and thus any probative value that decedent's criminal history might bring to bear on decedent's desire to resist arrest is minimal"); Stringer v. City of Pablo, No. C 07–03544 MEJ, 2009 WL 5215396, at *3 (N.D.Cal. Dec. 28, 2009) (reading Boyd as "limited to cases where a suicide by cop theory is being asserted or other similar circumstances where the suspect/defendant's intent is clearly at issue").

Moreover, there is no dispute regarding Jackson's intention, motive, or plan prior to Bannes' use of force. Plaintiff concedes that his intention in climbing out of the attic dormer vent was to flee his residence and escape from the police. Defendants erroneously contend that Boyd's holding is not limited to whether a plaintiff's "intent,

motive, or plan" is disputed. (Pltf. MIL 1 Opp. at 6.) That is precisely the holding in Boyd; in fact, it is in the very sentence upon which Defendants rely: "where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible." Boyd, 576 F.3d at 944. (emphasis added). Other district courts in this circuit have likewise so limited the holding in Boyd. See Willis v. City of Fresno, No. 1:09–CV–01766–BAM, 2013 WL 6145232, at *4 (E.D.Cal. Nov. 21, 2013) (declining to admit evidence of prior acts under Boyd where the plaintiff's "motive or intent [was] not at issue, as it was in Boyd" and where his "absence of mistake or accident is not at issue"); Turner v. Cty. of Kern, No. 1:11–CV–1366 AWI SKO, 2014 WL 560834, at *2 (E.D.Cal. Feb. 13, 2014) (admitting evidence of prior acts under Boyd specifically "because there is a dispute about [the plaintiff's] conduct"); Stringer, 2009 WL 5215396, at *3 (reading Boyd as "limited to cases where a suicide by cop theory is being asserted or other similar circumstances where the suspect/defendant's intent is clearly at issue").

Further, Defendants have not demonstrated why Jackson's actions that day— allegedly stealing building materials and a car—if unknown to Bannes, lend support to Bannes' account of why his use of force was reasonable. The only theory Defendants put forth is that these alleged thefts demonstrate "criminal brazenness." (Pltf. MIL 1 Opp. at 7-8.) This is insufficient. There is no logical connection between allegedly stealing items and endangering the lives of law enforcement officers or others, or even attempting to flee a scene—facts which would tend to establish Bannes' reasonableness. Accordingly, the Court will not admit facts related to the alleged thefts to the extent such facts were unknown by Bannes at the time he deployed the bean bag round and Taser dart. See

Stringer, 2009 WL 5215396, at *3 (distinguishing Boyd and declining to admit evidence of a plaintiff's prior bad acts where the defendants were not defending on a "suicide by cop" theory and where defendants had not "persuasively articulated how Decedent's prior convictions lend support to the Officers' account of how Decedent acted when they tried to detain him").

Subject to the foregoing, to the extent Bannes was aware of the information Plaintiff seeks to exclude at the time Bannes fired his Taser at Jackson, Plaintiff's motion is DENIED.

### 2. Plaintiff's Motion in Limine No. 2

■ Plaintiff moves to exclude any evidence of his drug use, including notations of drugs and alcohol in his medical chart, on the grounds such evidence is irrelevant, unduly prejudicial, and impermissible character evidence. (Pltf. MIL 2, Dkt. No. 82.) Defendant opposes to the extent Plaintiff seeks to exclude evidence of the whiskey bottle that fell from the attic during the standoff, the empty bottle of OxyContin found in Jackson's bedroom, and the notations of drugs and alcohol in his medical charge. (Pltf. MIL 2 Opp., Dkt. No. 91.) Defendants do not seek to introduce evidence of Plaintiff's past drug or alcohol history.

Evidence that Jackson was intoxicated during the standoff is relevant to his credibility in remembering the versions of the events that day. It is also relevant to establish whether his intoxication or the Taser caused him to fall as he exited the dormer vent. Accordingly, the Court DENIES Plaintiff's motion to the extent he seeks to exclude evidence that he was intoxicated with drugs or alcohol on the day of the incident. See Turner, 2014 WL 560834, at *2 (admitting evidence that the plaintiff had alcohol and methamphetamine in his system because it was relevant to explain his conduct and to corroborate the

deputies' version of events). The Court will admit the medical charts and any additional evidence that is consistent with the medical charts. For example, if the medical chart shows that Jackson was tested for OxyContin, but none was found in his system, the empty bottle of OxyContin pills found in his bedroom will be excluded as irrelevant. The Court will also admit evidence, such as Plaintiff's statements, that would independently establish that he was intoxicated at the time of the incident.

### 3. Plaintiff's Motion in Limine No. 3

■ Plaintiff moves to exclude any and all evidence of his criminal history and prior bad acts on the grounds that such evidence is irrelevant, impermissible character evidence, and unduly prejudicial. (Pltf. MIL 3, Dkt. No. 83.) Defendants do not oppose this motion other than they wish to introduce the criminal history that was conveyed to Bannes and included in the totality of circumstances known to him at the time Bannes made the use-of-force decision. (Plft. MIL 3 Opp., Dkt. No. 92.) Information that Bannes received regarding Jackson prior to the use of force, including evidence of Jackson's prior criminal history, is relevant and admissible under Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). See Ruvalcaba, 64 F.3d at 1328. The Court will instruct the jury to consider Jackson's prior conduct only in determining whether Bannes' actions were reasonable under the circumstances and not for any other purpose. Id.

Plaintiff's third motion in limine is DENIED.

### 4. Plaintiff's Motion in Limine No. 4

■ Plaintiff moves to exclude any evidence of weapons found on his person when he was taken into custody. (Pltf. MIL 4, Dkt. No. 84.) Jackson had pocket knives in his pocket when he was apprehended. Throughout the course of the standoff, he never displayed the knives to any officer nor informed them that he had the knives. Bannes had no knowledge that Jackson had the pocket knives.

Defendants oppose, citing Boyd again for the proposition that law enforcement officers are permitted to introduce evidence of facts that were unknown to them at the time of the incident where such facts corroborate facts that were observed and relied upon by the officer in the officer's decision to use force during the incident. (Pltf. MIL 4 Opp., Dkt. No. 93.) As stated above, Boyd is only applicable "where what the officer perceived just prior to the use of force is in dispute" and where such evidence would tend to "support one version of events over another." Boyd, 576 F.3d at 944. At the hearing on the motions, Defendants conceded that Jackson did not display the knives at the time of the incident. Therefore, neither party contends that Jackson displayed the knives before the fall. As such, Boyd does not apply and evidence of the knives will be excluded.

Plaintiff's fourth motion in limine is GRANTED.

### 5. Plaintiff's Motion in Limine No. 5

■ Finally, Plaintiff moves to exclude any evidence, argument, or reference to the statement Jackson allegedly made to his neighborhood watch team that he had an "arsenal of weapons" and could "defend himself." (Pltf. MIL 5, Dkt. No. 85.) Someone from the neighborhood watch team allegedly reported this statement to the police during the course of the standoff. This statement was then briefed to Bannes prior to his use of force.

Plaintiff argues that this statement is inadmissible hearsay and is unduly prejudicial. Defendants oppose, contending that the statement is not offered for its truth, but for the effect of the statement on Bannes. (Pltf. MIL 5 Opp., Dkt. No. 94.) The Court agrees with Defendants. This

evidence is not coming in for the truth of the matter asserted. There are three ways this statement could come in. First, if elicited from Jackson by Defendants, the statement is admissible as an admission by a party opponent under Rule 801(d)(2) of the Federal Rules of Evidence. Second, the evidence could be used to impeach Jackson if elicited from a third party. See United States v. Crouch, 731 F.2d 621, 623 (9th Cir.1984) ("Hearsay statements may be admissible to impeach a declarant who subsequently testifies at trial"). The Court notes, however, that because the statement contains double hearsay, it is of little impeachment value. See Morris v. Ylst, 447 F.3d 735, 741 (9th Cir.2006) (casting doubt on the impeachment value and admissibility of a letter that contained triple hearsay). Third, the statement can come in for the effect on the listener, namely Det. Bannes, who—after hearing this statement—may have formed a belief as to whether Jackson was armed with weapons.

Plaintiff's fifth motion in limine is therefore DENIED.

## B. Defendants' Motions in Limine

### 1. Defendants' Motion in Limine No. 1

 Defendants move to exclude any evidence that Plaintiff was not charged or convicted of the theft being investigated on the day of the incident and that the rifles observed inside Jackson's home were later discovered to be pellet or "BB" guns. (Deft. MIL 1, Dkt. No. 77.) Defendants contend that this evidence is irrelevant and unduly prejudicial. Plaintiff opposes on the grounds that the exclusion of this evidence would be unduly prejudicial to him. (Deft. MIL 1 Opp., Dkt. No. 96.)

Plaintiff offers no theories on why this evidence is relevant to the merits of his case. Det. Bannes did not personally ob-

serve the presence of the pellet guns. As such, the only relevant fact regarding the pellet guns is that a different officer believed them to be rifles and communicated that information to Det. Bannes. Whether the rifles were in fact pellet or BB guns is therefore irrelevant to Bannes' decision to use force against Jackson. However, should the statement that Jackson had an "arsenal of weapons" come in—either as an admission, as impeachment evidence, or for its effect on Bannes—the Court will admit the evidence that the rifles were BB guns, because to not do so would be unduly prejudicial to Jackson. See Fed. R. Evid. 403; United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir.2000).

As for the fact that Jackson was not convicted of the thefts being investigated that day, such evidence is irrelevant to Bannes' decision to use force against Jackson on the day of the incident. See Sanchez v. Dupnik, 362 Fed.Appx. 679, 681 (9th Cir.2010)[1] (in an excessive force case, affirming a district court's decision to exclude evidence of a plaintiff's acquittal on the charges arising out of his arrest).

For these reasons, Defendants' first motion in limine is GRANTED IN PART and DENIED IN PART.

### 2. Defendants' Motion in Limine No. 2

Defendants move to exclude the statements made by the deputy sheriff to paramedics on the day of the incident on the grounds that such statements constitute inadmissible hearsay, undue prejudice, and improper speculation. (Deft. MIL 2, Dkt. No. 78.) Plaintiff opposes on the grounds that the statements to the paramedic are not hearsay. (Deft. MIL 2 Opp., Dkt. No. 97.)

---

1. The Court notes that Sanchez is an unpublished Ninth Circuit case. Sanchez is cited as persuasive authority only, pursuant to Ninth Circuit Federal Rule of Appellate Procedure 36-3(b) as an unpublished disposition issued after January 1, 2007.

Two paramedics were deposed in this case. One, Eric Vansant, testified at his deposition that an unidentified deputy told him that Jackson had fallen from the dormer vent. He also testified that he believed Jackson had been shot with the Taser dart while he was in the dormer vent, although he later admitted his belief may have been speculation. The other paramedic, Kory Layton, testified that he was informed by a deputy at the scene that Jackson was shot by a Taser dart while he was in the dormer vent.

Defendants contend that the statements allegedly made by the unidentified deputy sheriff are inadmissible hearsay. Defendants are incorrect. The statements made by the deputy to the paramedics are admissible against the County as an opposing party's statements because Layton and Vansant testified that they were told this information by a San Bernardino County Sheriff's Department deputy. See Fed. R. Evid. 801(d)(2)(D) (statements are not hearsay when made by a party's employee on a matter within the scope of that relationship and offered against the employer).

█ Moreover, the Court finds by a preponderance of the evidence that the statements were made by Defendant Bannes and as such are admissible against him as an opposing party's statement. Where preliminary questions of fact must be decided before hearsay evidence may be introduced to the jury, the Court must find the fact to be established by a preponderance of the evidence. See Bourjaily v. United States, 483 U.S. 171, 176, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Although Bannes denies telling the paramedics that he shot Jackson while Jackson was in an elevated position, Bannes does admit that

he told the paramedics that he deployed a bean bag round and a Taser dart at Jackson, and that the Taser dart hit Jackson in his lower front abdomen. (Declaration of Det. Bannes ¶ 22, Dkt. No. 60 at 187.) He testified as his deposition that he made statements to the paramedics "immediately" after they arrived to treat Jackson. (Deposition of Det. Bannes at 42-43, Dkt. No. 97-1 at 34.) Sgt. Kelly Craig was the only person with Bannes on the north side of Jackson's house when he fell from the dormer vent. Craig testified at his deposition that he did not speak to the paramedics, but he saw Bannes talking to at least one paramedic about what had occurred that day. (Deposition of Kelly Craig at 42-43, Dkt. No. 103.) He testified that Bannes is the only person he saw talking to the paramedics. (Id.) At least one other deputy that was present at the scene testified that he did not speak to the paramedics. (Deposition of Sgt. Charbonneau at 23, 35, Dkt. No. 97-1 at 46.) There are no deputies other than Det. Bannes who have testified or declared that they spoke to the paramedics. Because Det. Bannes testified that he spoke to the paramedics, and because there is no evidence that any other deputy spoke to the paramedics, the Court finds that it is more likely than not that Det. Bannes is the individual who made the alleged statements to Kory Layton and Eric Vansant.[2] Accordingly, these statements come in against Bannes as statements against interest.[3] See Fed. R. Evid. 801(d)(2).

Defendants' second motion in limine is DENIED.

### 3. Defendants' Motion in Limine No. 3

Defendants move to exclude evidence of prior or subsequent investigations of or

---

**2.** Defendants can, of course, argue and present evidence at trial that no such statement was made, that Bannes did not make it, or that Layton and Vansant are mistaken.

**3.** Of course, Eric Vansant will not be able to testify that he believes Jackson was shot while in an elevated position unless he states that a deputy told him that or establishes some other foundation for that testimony.

allegations against Bannes in connection with his employment as a law enforcement officer. (Deft. MIL 3, Dkt. No. 79.) Plaintiff concedes that this evidence might be irrelevant to the merits of the case, but opposes the motion because Defendants may open the door at trial and the prior and subsequent bad acts may become relevant and/or admissible for impeachment or rebuttal. (Deft. MIL 3 Opp., Dkt. No. 98.) The Court agrees with Plaintiff. Bannes' prior conduct may become relevant and admissible as impeachment evidence. Accordingly, the Court DEFERS RULING on Defendants' third motion in limine.

### 4. Defendants' Motion in Limine No. 4

Finally, Defendants move to exclude the testimony of previously undisclosed or untimely disclosed lay and expert witnesses on the grounds of unfair surprise and prejudice. (Deft. MIL 4, Dkt. No. 80.) Defendants do not identify any specific witnesses they anticipate will be unfairly sprung upon them. In opposition, Plaintiff states that the only witnesses he is considering calling at trial that are not listed in his disclosures are his children, Haley and Robbie Jackson, for damages purposes. (Deft. MIL 4 Opp., Dkt. No. 99.) Both of these witnesses were disclosed to Defendants during the course of discovery through Plaintiff's deposition testimony and his life care planner's report.

The Court does not find that the exclusion of Plaintiff's children is appropriate. Defendants had notice of their potential relevance to this case well before trial. On that basis, Defendants fourth motion in limine is DENIED. To the extent either party seeks to call other witnesses that were not disclosed prior to trial, the Court will address the admissibility of such testimony as it arises during trial.

### IV. CONCLUSION

The Court hereby ORDERS as follows:

1. Defendants' motion to conduct jury voir dire by written questionnaire is DENIED.

2. Plaintiff's first motion in limine is DENIED.

3. Plaintiff's second motion in limine is DENIED.

4. Plaintiff's third motion in limine is DENIED.

5. Plaintiff's fourth motion in limine is GRANTED.

6. Plaintiff's fifth motion in limine is DENIED.

7. Defendants' first motion in limine is GRANTED IN PART and DENIED IN PART.

8. Defendants' second motion in limine is DENIED.

9. The Court DEFERS RULING on Defendants' third motion in limine.

10. Defendants' fourth motion in limine is DENIED.

**IT IS SO ORDERED.**