# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3285-18

STATE OF NEW JERSEY IN THE
INTEREST OF N.P., a minor.

_____

Argued March 3, 2021 – Decided June 23, 2021

Before Judges Alvarez, Sumners and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FJ-20-0906-18.

Cody T. Mason, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Cody T. Mason, of counsel and on the brief).

Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney; Michele C. Buckley, of counsel and on the brief).

PER CURIAM

Two juvenile complaints charged N.P. (Neal)[1] with acts which, if committed by an adult, would constitute the crime of third-degree criminal sexual contact with a person who was at least thirteen but less than sixteen, N.J.S.A. 2C:14-3(a); first-degree aggravated sexual assault with a person who was under thirteen, 2C:14-2(a)(1); and two counts of third-degree child endangerment, N.J.S.A. 2C:24-4(a)(1). The Family court found him guilty of all charges.

On appeal, defendant raises the following contentions:

POINT I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING CORROBORATIVE HEARSAY STATEMENTS THAT FAILED TO SATISFY THE TENDER YEARS AND FRESH COMPLAINT RULES.

A. THE STATEMENTS WERE NOT ADMISSIBLE AS SUBSTANTIVE PROOF UNDER N.J.R.E. 803(C)(27), THE TENDER YEARS EXCEPTION, BECAUSE THE STATE FAILED TO SHOW THAT [N.P.] NADINE AND [N.P.] NORA WERE UNDER THE AGE OF [TWELVE] AND THAT NORA'S STATEMENT TO B.P. [(BETTY)] RELATED TO SEXUAL MISCONDUCT.

---

[1] We use initials and pseudonyms to protect the identity of the juvenile and minors involved in these proceedings. R. 1:38-3(d).

A-3285-18

1. The court erred in admitting Nadine's statement to Q.R. [(Quinn)] because the court applied the wrong legal standard and because the State failed to prove that Nadine was under [twelve] when she made the statement.

2. The court erred in admitting Nora's statement to [Quinn] because the court applied the wrong legal standard and because the State failed to prove that Nora was under [twelve] when she made the statement.

3. The court erred in admitting Nora's statement to [Betty] because the court applied the wrong legal standard and because the State failed to prove that Nora was under [twelve] when she made the statement.

4. The court further erred in admitting Nora's statement to [Betty] because the State failed to establish that the statement related to sexual misconduct.

B. NADINE'S STATEMENT TO [QUINN] AND NORA'S STATEMENT TO [BETTY] WERE WRONGLY ADMITTED AS FRESH COMPLAINT EVIDENCE.

1. The State failed to show that Nadine's statement to [Quinn] was made in a reasonable amount of time.

2. The State failed to show that Nora's statement to [Betty] was made in a reasonable amount of time and that it related to sexual assault.

C. REVERSAL IS REQUIRED BECAUSE THE STATEMENTS WERE USED AS SUBSTANTIVE,

CORROBORATIVE EVIDENCE TO BOLSTER THE STATE'S CASE.

1. Reversal is required because of the weaknesses in the State's case and the statements' importance.

2. Reversal is required even if the statements were admissible as fresh complaint evidence.

POINT II

THE STATE IMPROPERLY BOLSTERED ITS CASE WITH [QUINN'S] TESTIMONY THAT SHE HAD NO REASON TO DOUBT HER CHILDREN'S ALLEGATIONS, AND THAT THEY HAD NEVER ACCUSED ANYONE ELSE OF SEXUAL ABUSE. (Not raised below)

A.  [QUINN'S] TESTIMONY THAT SHE HAD NO REASON TO DOUBT HER DAUGHTERS' CLAIMS WAS IMPROPER OPINION TESTIMONY ON THE CREDIBILITY OF THE STATE'S WITNESSES.

B.  [QUINN'S] TESTIMONY THAT HER DAUGHTERS HAD NEVER ACCUSED ANYONE ELSE OF SEXUAL ABUSE IMPROPERLY BOLSTERED THEIR CREDIBILITY AND AMOUNTED TO PLAIN ERROR.

POINT III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT SEQUESTERED JUVENILE'S LEGAL GUARDIAN FROM THE COURTROOM.

POINT IV

4

THE CUMULATIVE EFFECT OF THE ERRORS DEPRIVED JUVENILE OF DUE PROCESS AND A FAIR TRIAL AND WARRANTS REVERSAL.  (Not raised below)

For the reasons that follow, we affirm.

## I.

Neal was born in November 1998.  He has the same father as his half-sisters, Nora, born in 2002, and Nadine, born in 2004.  Since he was five months old, Neal was raised by his paternal grandmother D.P. (Danielle), who eventually obtained legal custody of him.  The girls were raised by their mother, Quinn.

In June 2018, the above-noted juvenile complaints were issued against Neal when he was nineteen years old.  The complaints identified Danielle as Neal's grandmother and guardian and indicated that he was living with her when charged.

<u>Rule 104 Hearing</u>

At a Rule 104 hearing on December 10, 2018, the trial court considered whether statements by Nora to her friend Betty and her mother Quinn and by Nadine to Quinn were admissible under the tender years exception and as fresh complaints.  The hearing revealed the following testimony.

Betty testified that in early 2014, when they were in the fifth or sixth grade, Nora stated that Neal "touched her." According to Betty, Nora said she was afraid to tell her mother. Neal was about fifteen years old at the time of the alleged incident.

Quinn testified that sometime in February 2014, Nora stated that Neal, around two weeks earlier, tried to put his hand down her pants when she was at her grandmother's house to use a computer printer for a school project. Quinn then separately asked her daughters if anyone had ever touched them in an inappropriate way. Quinn stated Nadine replied "no"; she did not tell Nadine what Nora told her about Neal's touching.

Quinn did not tell Danielle about Nora's allegation until "a month or two later" because Danielle had been in the hospital. Danielle replied that she would talk to Neal. Quinn was unaware if Danielle did so. Quinn testified that she was only aware of the one abuse incident and did not contact the police because she did not want Neal to be arrested. Nevertheless, she stated that she limited her daughters' visits to Danielle's home to when she was with them: once, at a barbeque in 2016 or 2017, and following Neal's high school graduation in 2017.

In February 2018, Quinn stated that Nadine, who was thirteen years old at the time, called her at work and told her that Neal had "[done] the same thing

A-3285-18

[to her] that he tried to do to [Nora]. . . ."  Quinn assumed this meant Neal had his hands down Nadine's pants.  Approximately two weeks later, Quinn reported to the police that Neal, who was then nineteen, sexually abused her daughters.

At one point, the following questioning occurred:

> [PROSECUTOR:] As far as you are aware has [Nadine] or [Nora] ever accused anyone else of sexual abuse to them [sic]?
>
> [Quinn:] No.
>
>     . . . .
>
> [PROSECUTOR:] Do you have any reasons to doubt what your daughters told you?
>
> [Quinn:] Absolutely not.

The court overruled defense counsel's objection to the State's second question calling for Quinn's opinion, finding her testimony was permissible lay opinion. There was no objection to the first question concerning whether Nadine or Nora had accused anyone else of sexual abuse.

Prior to Quinn's cross-examination, the State moved to sequester Danielle, because even though she was Neal's legal guardian, she "might" be called as a witness and therefore could "tailor her testimony" if permitted to hear other witnesses testify.  The State argued that because Neal was then twenty years old, he was no longer a juvenile entitled to have his legal guardian present with him

7

during the delinquency hearing. Defense counsel objected, arguing Neal was "being tried as a juvenile, not as an adult, and therefore his grandmother who is his legal guardian has been with him throughout." He also indicated that Danielle might not testify. The court, acknowledging Neal's age and Danielle's possible testimony, granted the State's request, ruling that "sequestration is appropriate." Danielle was directed to leave the courtroom.

The next day, the court determined that Nora's statement to Betty and Quinn and Nadine's statement to Quinn were admissible under the tender years exception and as fresh complaint testimony. Finding Betty and Quinn were credible, the court determined that the tender years exception applied because both Nora and Nadine were twelve years old or younger when they made their statements. As for the applicability of the fresh complaint rule, the court found that Nora's statements were made shortly after the abuse occurred, and given Nadine's youth, it was "not . . . unreasonable" for her to have taken "approximately three years or so" to tell her mother about Neal's abuse. The Rule 104 hearing testimony was incorporated into the trial evidence.

Trial

Nora and Nadine testified to multiple instances of Neal's sexual abuse, which all occurred at their grandmother's house. Neal chose not to testify.

8

Nora testified that one of the first times Neal touched her inappropriately, he came up from behind her and "grabb[ed] . . . [her] lower waist" while she was looking for something in the pantry. On another occasion, she stated that as she was swimming to the side of the pool, Neal came up behind her and touched her vagina and buttocks over her bathing suit, which she understood to be "in a sexual way." Another incident occurred when she was sleeping, and Neal got into the bed behind her, put his hand on her stomach, and, when she told him to "get off" of her, he said "no" and moved his hand toward her vagina, over her clothes.

Nadine testified that after school, Neal put her hands in his pants and inserted his fingers in her vagina. She indicated this happened "[a]bout three times[,]" when she was five or six years old. He also exposed himself to her when she was seven. The last time he touched her, she was eight years old.

Nora also testified to several other separate incidents of abuse:

- On Halloween, when she was in the seventh grade and sleeping, Neal entered the room, grabbed her hand, forced it inside his pants, and made her touch his penis, at which point he "moan[ed]."

9

- While she was in the bathroom undressed, Neal entered the bathroom, offered to help her change, refused to leave when asked, stared at her, and then left.

- Neal had to use the bathroom when she was in the shower, but when she got out of the shower, thinking he was gone, he was still there, and touched her shoulders and tried to take her towel off.

- During this second shower incident, she felt Neal's penis touch the lower center of her back.

- Sometime after her father died in December 2013, he took her phone, and when she chased him to get it back, he asked to touch her, to which she said no; then, he held her phone above his head and had her jump to get it. Nora testified that she believed Neal was trying to get her to jump because she had "started developing breasts."

Nora testified in detail about Neal's abuse that she related to Betty and her mother. She stated she was using her grandmother's printer for a school project when Neal started "feeling on [her]," touching her upper thigh while she was sitting in the living room. After he refused to stop and she tried to leave, he pulled her arm and pinned her to the ground. He then tried to take her pants off

10

by pulling on the waistline. While the two were struggling, Neal's dog tried to pull him off her. Nora managed to get up and leave.

In adjudicating Neal delinquent on all four charges, the court found credible the testimony of Nora, Nadine, and Betty—ages sixteen, fourteen, and sixteen, respectively, at the time of trial. The court also found Quinn credible but "with some caveats [as] to her credibility." The court found Danielle "somewhat less" credible.

At sentencing, the court imposed a suspended sentence of one year with a three-year term of sex-offender-specific probation. Neal was required to receive sex-offender treatment and not have unsupervised contact with children under the age of thirteen. All necessary fines and the conditions required under Megan's Law were also imposed.

## II.

In Point I, Neal contends that, over his objection, the trial court erred in finding the statements accusing him of abuse by Nora to Betty and Nadine to Quinn admissible under the tender years exception[2] and as fresh complaints. He

---

[2] The State agrees that the trial court erroneously admitted the statements under the tender years exception because there was no finding that either of the victims was under twelve when they made their respective statements. Thus, we do not address Neal's tender years argument.

11

contends the rulings violated his "constitutional rights to due process and a fair trial [under] U.S. Const. amends. VI, XIV [and] N.J. Const. art. I, ¶¶ 1, 10" because the court erroneously "relied upon those statements to corroborate the allegations and to bolster [the sisters'] credibility." He contends the State did not show that the delay—"a minimum of five or six years passed after the last incident and at least eight or nine years passed after the first incident"—in Nadine's allegation of abuse to her mother was reasonable. He cites to situations where our Supreme Court and this court have previously disapproved of shorter delays: State v. W.B., 205 N.J. 588, 618-19 (2011) (two years); State v. R.E.B., 385 N.J. Super. 72, 80 (App. Div. 2006) ("about two years"); State v. Pillar, 359 N.J. Super. 249, 285 (App. Div. 2003) (six years); State v. L.P., 352 N.J. Super. 369, 374 (App. Div. 2002) (less than one year); State v. Hummel, 132 N.J. Super. 412, 423 (App. Div. 1975) (four to six weeks). He adds there was no evidence that he threatened Nadine not to disclose his conduct, which he claims is necessary to explain a long delay in reporting the alleged abuse.

As for Nora's statement to Betty about Neal's "touching," Neal contends the record fails to support "the court's finding that Nora disclosed 'the incident' to [Betty] 'shortly after the occurrence.'" He also maintains there was no testimony that the "touching" referred to sexual abuse.

Moreover, Neal argues that even if Nadine's and Nora's statements were admissible as fresh complaint evidence, the court improperly used them to substantively support the abuse allegations. State v. R.K., 220 N.J. 444, 456 (2015). See also State v. Bethune, 121 N.J. 137, 146, 148 (1990), which states fresh complaint evidence could not be used "to prove . . . sexual assault charges" or to "corroborate the victim's allegations . . . ." Neal asserts reversal is appropriate because only the tender years exception, which does not apply, permits the use of the statements for substantive proof of the abuse.

The trial court did not abuse its discretion by allowing as a fresh complaint Nora's statements to Betty and Quinn and Nadine's statement to Quinn, disclosing Neal's abuse; thus, his right to a fair trial was not denied. See State v. Cope, 224 N.J. 530, 554-55 (2016) (recognizing the trial court retains broad discretion in determining the admissibility of evidence); Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) ("[W]e will reverse an evidentiary ruling only if it 'was so wide [of] the mark that a manifest denial of justice resulted.'") (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). Under the fresh complaint rule, the State can present "evidence of a victim's complaint of sexual abuse, [which is] otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge is

fabricated." R.K., 220 N.J. at 455. See also State v. Hill, 121 N.J. 150, 163 (1990); State v. Balles, 47 N.J. 331, 338 (1966). A statement which is the result of a "pointed, inquisitive, coercive interrogation" should not be admitted because it undermines the "voluntariness" of the disclosure. Hill, 121 N.J. at 167. In making its voluntariness determination, the trial court should consider the following factors:

> the age of the victim; the circumstances under which the interrogation takes place; the victim's relationship with the interrogator, i.e., relative, friend, professional counselor, or authoritarian figure; who initiated the discussion; the type of questions asked—whether they are leading and their specificity regarding the alleged abuser and the acts alleged.
>
> [Id. at 168 (citation omitted).]

The statements by Nora and Nadine accusing Neal of abuse were properly admitted as fresh complaints to negate the inference that the delay in making the complaints shows that the abuse did not occur. The testimony established that the statements were voluntarily made to a friend and parent, respectively, without any initiation or interrogation. Considering the victims' youth, it was understandable that their reporting was delayed—Nora waited just a few days to tell Betty and a week or two to tell Quinn about the incident when Neal took her phone and pinned her to the ground but an unknown amount of time if she

14

meant to include in that revelation of "touching" to Betty other incidents that happened to her when she was "a little girl"; Nadine waited three years to tell someone about Neal's conduct. See W.B., 205 N.J. at 618 (quoting State v. P.H, 178 N.J. 378, 393 (2004) ("[T]he reasonable time component of the fresh complaint rule must be applied flexibly 'in light of the reluctance of children to report a sexual assault and their limited understanding of what was done to them.'")). Contrary to Neal's argument, Nora's statement to Betty that Neal "touched her" can reasonably be interpreted as a fifth or sixth grade girl's allegation of sexual abuse.

The court did not rely on the statements to Betty and Quinn to corroborate the victims' testimony in adjudicating Neal's delinquency. As discussed below, the court relied instead on the significant credible testimony by Nora and Nadine detailing Neal's abuse.

The State concedes the court erred in admitting the statements under the tender years exception because nothing in the record established that Nora and Nadine were under the age of twelve years old when the statements were made. Nonetheless, the mistaken application of the tender years exception did not taint the court's admission of the statements as fresh complaint. For the reasons stated, there were sound reasons for applying the fresh complaint rule.

III.

In Point II, Neal argues that the prosecutor engaged in improper bolstering when he asked Quinn if: (1) she had any reason to doubt her daughters' accusations; and (2) if her daughters had ever complained that anyone else had sexually assaulted them. Neal claims the court disregarded his objections to admit Quinn's first statement as improper opinion testimony. Thus, he must show there was some real possibility that the purported error led the court as the factfinder to a verdict it might not have reached. See State v. Baum, 224 N.J. 147, 159 (2016). Because he did not object to Quinn's second statement, Neal argues plain error, R. 2:10-2, occurred; the testimony was irrelevant under N.J.R.E. 401; and it improperly suggested that Nora's and Nadine's allegations were truthful, creating unfair prejudice, N.J.R.E. 403. In addition, he submits the testimony should have been barred under N.J.R.E. 608 and 405 because it was impermissible character evidence in suggesting that the girls' "lack of prior complaints was used to suggest that they had truthful characters." Consequently, Neal maintains his delinquency adjudications should be reversed as a result of Quinn's bolstering of Nora's and Nadine's allegations.

We agree with Neal that Quinn should not have testified regarding the truthfulness of her daughters' allegations, nor whether they had made abuse

16

allegations against anyone other than Neal. Quinn's testimony improperly bolstered the victims' testimony. However, there was neither plain nor harmful error through its admission.

As our Supreme Court noted in R.K., the general rule is that "other witnesses are prohibited from giving their opinions about [another witness's] credibility." 220 N.J. at 460. For example, the Court has found a step-sister's bolstering of the victim's credibility, in a case that "presented a 'pitched credibility battle[,] . . . .'" to be reversible plain error. Id. at 461 (quoting State v. Frisby, 174 N.J. 583, 596 (2002)).

One witness's improper bolstering of another will survive plain error review when there is overwhelming evidence to support the trial court decision. In State v. Bunch, the Court ruled that the defendant's testimony assessing the credibility of another witness was error but considering "the substantial amount of evidence of defendant's guilt and the trial court's instruction to the jury that it must determine the witnesses' credibility . . . [it] conclude[d] that the improper statement was not so egregious that it deprived defendant of a fair trial." 180 N.J. 534, 549 (2004) (internal quotation marks and citations omitted). Likewise, we held in State v. Green, 318 N.J. Super. 361, 378 (App. Div. 1999), that even though it was improper to ask a witness to "characterize the testimony of another

A-3285-18

witness[,]" it did not independently support reversal, as "the evidence of guilt was overwhelming." A similar situation occurred here where the court found that the extensive testimony of Nora and Nadine detailing Neal's abuse was credible—without regard to their mother's bolstering testimony.

"When reviewing the result of a bench trial, we do not make factual findings." State ex. rel. D.M., 451 N.J. Super. 415, 424 (App. Div. 2017). We "must accept a trial court's factual finding if it is supported by sufficient credible evidence in the record." State v. Arthur, 184 N.J. 307, 320 (2005) (citing State v. Locurto, 157 N.J. 463, 472 (1999)). See State v. Yough, 208 N.J. 385, 403 (2011) (quoting Locurto, 157 N.J. at 471) ("Unlike an appellate court, a trial judge has the 'opportunity to hear and see the witnesses,' which includes observing gestures and facial expressions."). Based on the court's factual findings, we cannot conclude there was plain or harmful error in the admission of Quinn's testimony given the court's reliance upon the credible and significant testimony of Nora and Nadine.

IV.

Neal contends in Point III that the sequestration of Danielle constitutes reversible error because under Rule 5:20-4 and its interpretation in State ex rel. V.M., 363 N.J. Super. 529 (App. Div. 2003), she was a necessary party entitled

to be present throughout the delinquency hearing as his legal guardian regardless of his age.  We disagree.

Rule 5:20-4 provides: "The parents, guardians or other person having custody, control and supervision over the juvenile shall be necessary parties to every proceeding in all juvenile delinquency actions."  (Emphasis added).  In V.M., we held that the rule "implicitly, if not explicitly, affords the accused juvenile's parents the same right as the juvenile to remain in the courtroom during the juvenile's trial" and that the right is akin to an adult defendant's "right to be present during his or her trial."  363 N.J. Super at 534-35.  We further held that the sequestration of the juvenile's mother required reversal because "regardless of whether a juvenile's parent will be called as a witness, . . . [an] order removing the parent from the courtroom is harmful error."  V.M., 363 N.J. Super. at 536.

Neal maintains that even though he was no longer a juvenile at the time of the hearing, Danielle "was a party to the action, was required to be present, and could not be removed simply because she might testify."  He cites the plain language of the Rule 5:20-4, which provides a guardian's right to be present applies in all juvenile court matters, with no mention of the juvenile's age or other variables.  Neal argues that his grandmother's absence was "substantial,

and clearly harmful, particularly given that she likely had a better memory of what occurred at the relevant time periods, when [Neal] was a child."  She was unable to be present for Quinn's cross examination during the Rule 104 hearing, Nora's and Nadine's trial testimony, Neal's election not to testify, and the parties' summations.[3]

There is no dispute that the Family court had jurisdiction over Neal's delinquency proceeding even though he was twenty years old at the time of trial and the charges had been filed when he was no longer a juvenile.  See, e.g., State ex rel. J.S., 202 N.J. 465, 467-68 (2010) (noting J.S. was twenty-one years old when tried and adjudicated delinquent for sexual assault committed as a minor). The State contends that because Neal was an adult when he stood trial, Danielle was no longer his guardian, in the sense of "having custody, control and supervision over" Neal.  Thus, her presence was not mandated by the statute.

Our reading of the law establishes that parents or guardians have a right to be present at a juvenile delinquency hearing as well as rights and interests in a delinquency action that are independent of, and not necessarily coextensive

---

[3]  These arguments were not specifically raised at the hearing; thus, we would normally decline to consider them.  State v. Marroccelli, 448 N.J. Super. 349, 373 (App. Div. 2017) (citation omitted).  However, because they "concern matters of great public interest," a parent or legal guardian's right to participate in a juvenile delinquency proceeding, we will consider them.  Ibid.

with, the juvenile's rights and interests. None of these rights are nullified because the juvenile turns eighteen years old prior to trial or is over eighteen years when the charges are initiated.

Both N.J.S.A. 2A:4A-33 and Rule 5:21-1 provide that a juvenile's parents or guardian must be "immediately" notified when the juvenile is taken into custody. When a delinquency action is undertaken, "a summons shall issue to the juvenile and the juvenile's parents, guardians or custodian." R. 5:20-2. The State is obligated to provide discovery to "the defense" in juvenile delinquency matters, "which may include the juvenile, the juvenile's attorney, and the juvenile's parent or guardian." R. 5:20-5(a). Jurisdiction in a delinquency action "shall extend . . . over a juvenile and his parent, guardian or any family member found by the court to be contributing to a juvenile-family crisis." N.J.S.A. 2A:4A-24(a). If the court determines "an act of delinquency [has been committed] . . . , the court may impose such disposition or dispositions over those persons subject to its jurisdiction consistent with the purposes of this act." Ibid.

Whether to sequester a witness is generally discretionary with the trial court. State v. DiModica, 40 N.J. 404, 413 (1963); Morton Bldgs., Inc. v. Rezultz, Inc., 127 N.J. 227, 233 (1992). "The purpose of sequestration is to

21

discourage collusion and expose contrived testimony." Morton Bldgs. Inc., 127 N.J. at 233 (citing 1 Stephen A. Saltzberg & Michael M. Martin, The Federal Rules of Evidence Manual 736 (5th ed. 1990)).

While the court's sequestration order impacts the guardian, it seemingly would not apply in a situation where the juvenile is twenty years old and, thus, is not subject to a parent's or guardian's "constitutional right to enjoy a relationship with their child[]." S.M. v. K.M., 433 N.J. Super. 552, 558 (App. Div. 2013) (citing In Re Guardianship of K.H.O., 161 N.J. 337, 346 (1999)). "A parent's right to enjoy a relationship with his or her child is constitutionally protected," K.H.O., 161 N.J. at 346, but does not apply when the juvenile becomes an adult. See N.J.S.A. 2A:4A-22(a) (defining "juvenile" as "an individual who is under the age of 18 years"). On the other hand, it is plausible that the court's right under N.J.S.A. 2A:4A-43(b)(15) to "[o]rder the parent or guardian of the juvenile to participate in appropriate programs or services when the court has found either that such person's omission or conduct was a significant contributing factor towards the commission of the delinquent act," can remain in force where a person over the age of eighteen faces delinquency charges. The same can said for N.J.S.A. 2A:4A-43(b)(19), which allows the court to "[o]rder a parent or guardian who has failed or neglected to exercise

reasonable supervision or control of a juvenile who has been adjudicated delinquent to make restitution to any person or entity who has suffered a loss as a result of that offense."

Consequently, Rule 5:20-4's dictate that "parents, guardians or other person having custody, control and supervision over the juvenile shall be necessary parties to every proceeding in all juvenile delinquency actions" must be examined based on the Family court record. Neal argues Danielle should not have been sequestered because she was his guardian. However, there was no evidence presented that she had "custody, control and supervision over" him. The mere fact that at the time the charges were filed, Danielle was listed as his guardian and was entitled to receive notification of the juvenile proceedings and discovery, was not indicative of the role she had in Neal's life as a twenty-year-old man facing juvenile charges. Under the aforementioned juvenile proceeding guidelines, Danielle, who had custody of Neal at the time of the incident when he was a juvenile, could have potentially been subject to an order imposing loss of custody, unwanted services, or mandating restitution. Yet, given Neal's age at the time of trial, there was little likelihood such conditions would be imposed. In fact, they were not after Neal was adjudicated delinquent.

We place no significance in the principle espoused in <u>V.M.</u> that the testifying parent was wrongly sequestered because V.M. was not an adult. In <u>V.M.</u>, we were primarily focused on the juvenile's interests of comfort, support, and "an added layer of protection," which was best served by having his mother present at trial. 363 N.J. Super. at 534. The record is devoid of any such interest here.

We reject Neal's unqualified assertion that his age at the time of the delinquency trial has no bearing on whether his legal guardian has a right to be present even though she might testify. What if he were twenty-five, should Danielle be entitled to be at his side during the trial? We think not, and the same applies to being twenty-one, unless there was a showing that, as guardian, she had "custody, control and supervision over" him requiring her comfort, support, and protection during the trial. It may be true that Danielle's presence would help because she might have a better memory of what occurred when Neal was a teenager. However, Danielle was allowed to testify to rebut any of the claims or situations alleged by the State's witnesses.

The better course is for the court to weigh the interests of the trial subject in having a parent or legal guardian present against the interests in favor of sequestration. The court should conduct a fact-specific analysis, including

24

whether the now-adult subject (1) was living with the parent or guardian at the time of trial; (2) was financially dependent on the parent or guardian; (3) generally looked to the parent or guardian for support and advice in life decisions; (4) involved the parent or guardian in preparing the defense; (5) the age of the subject; and (6) any other relevant factors. By considering these factors, the court would be in a position to assess the strength of the subject's interest in having the parent or guardian present at trial, regardless of whether the parent or guardian will testify.

V.

Finally, we address Neal's argument in Point IV that cumulative error deprived him of a fair trial. When multiple errors are alleged, "the predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair." State v. Wakefield, 190 N.J. 397, 538 (2007). However, even where a defendant alleges multiple errors, "the theory of cumulative error will still not apply where no error was prejudicial and the trial was fair." State v. Weaver, 219 N.J. 131, 155 (2014).

Given our conclusions that there were no trial errors regarding the admission of evidence and the sequestration of Danielle, there can be no cumulative errors that denied defendant a fair trial.

A-3285-18

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3285-18